[No. A067227. First Dist., Div. Four. Mar. 23, 1995.]

ROBERT BARNES, Plaintiff and Respondent, v.
GERMAINE Q. WONG, as Registrar of Voters, etc., Defendant and
Appellant.

**COUNSEL**

Louise H. Renne, City Attorney, Burk E. Delventhal, Randy Riddle and Julia A. Moll, Deputy City Attorneys, for Defendant and Appellant.

Robert Barnes, in pro. per., for Plaintiff and Respondent.

**OPINION**

**ANDERSON, P. J.**—Does mandamus lie to compel a registrar of voters to accept for filing a ballot argument that a voter tried to file more than five

hours after the widely publicized filing deadline? Invoking, among other things, the public interest in providing voters with a balanced statement of positions on the proposed ballot measure, the superior court concluded it did and commanded Germaine Q. Wong, the Registrar of Voters for the City and County of San Francisco (City), to accept the late filing and include it in the voter information pamphlet. She did; the election has since come and gone. We decide the merits of the appeal because the public interest in the proper administration of preelection procedures is substantial as is the probability that the issue will surface again. (*Mann* v. *Superior Court* (1986) 181 Cal.App.3d 372, 374 [226 Cal.Rptr. 263]; *Save Stanislaus Area Farm Economy* v. *Board of Supervisors* (1993) 13 Cal.App.4th 141, 147-148 [16 Cal.Rptr.2d 408].)

## I. BACKGROUND

### A. *General*

Under our state Constitution, chartered cities such as San Francisco look to their charters, rather than the general law, as the source of authority for procedures governing submission of ballot arguments. (Cal. Const., art. II, § 11, and art. XI, § 5; *Gebert* v. *Patterson* (1986) 186 Cal.App.3d 868, 872, fn. 2 [231 Cal.Rptr. 150].) Accordingly, the San Francisco Charter empowers the board of supervisors (Board) to provide, by ordinance, for the format of ballot pamphlets and the submission, review, selection, printing and inclusion of ballot arguments. (S. F. Charter, § 9.112.) Pursuant to the Constitution and the authority given to the Board under section 9.112 of the San Francisco Charter, the Board adopted San Francisco Administrative Code section 5.74.1 et seq. which governs ballot arguments and procedures for submission and publication of ballot arguments.

These regulations set forth a priority scheme for determining the one argument for and against a given measure that will be printed in the voter pamphlet free of charge (S.F. Admin. Code, §§ 5.74.4, 5.74.5) and further provide for the publication of additional arguments for or against a measure upon timely (1) deposit of a fee sufficient to defray the full cost of printing or (2) submission of signatures in lieu of the fee (*id.*, §§ 5.74.8, 5.74.9).

Upon selection of the official argument of the proponent and opponent, the registrar of voters must "send copies of both to the persons whose arguments have been selected." These authors can then submit rebuttal arguments. (S.F. Admin. Code, § 5.74.6.)

The deadline for submitting the official proponent's and opponent's arguments is "not later than noon of the 77th day prior to the election." (S.F.

Admin. Code, § 5.74.3.) For the November 8, 1994, general election, that deadline was noon on Tuesday, August 23. The deadline for rebuttal and paid arguments is no later than noon of the 70th day prior to the election, or August 30 in the case at hand.

Arguments prepared and submitted in compliance with these provisions are placed in the voters pamphlet (S.F. Admin. Code, § 5.77.1), which is printed and mailed to approximately 450,000 San Francisco voters.

## B. *The Proposition K Ballot Argument*

Respondent Robert Barnes was the community outreach director for the "No on K" Committee formed to oppose Proposition K, a measure put to the San Francisco voters on November 8, 1994, which would have changed the laws regulating collection of garbage and recycling. At approximately 5 p.m. on August 23d, Barnes presented for filing his opposition argument to Proposition K. He mistakenly believed the deadline was noon the next day. He had relied on a sign posted in the registrar of voters office regarding the public inspection of voter pamphlets which listed the inspection period for proponent's and opponent's arguments as commencing Wednesday, August 24th.[1] Registrar Wong explained she could not accept the argument because the deadline had passed.

Barnes immediately filed a petition for emergency peremptory writ of mandate on August 24. In his points and authorities Barnes argued Registrar Wong was estopped from rejecting his papers because the public inspection sign was misleading. He further argued he substantially complied with the law.

Opposing the petition, Registrar Wong, who had held that office since August 1989, related that her office undertook a number of steps to educate the public about the ballot process, including publication of a guide for submitting arguments on San Francisco ballot measures which Barnes acknowledged receiving. The guide repeatedly set forth the applicable deadlines. Additionally, the Registrar of Voters office conducted "brown bag" lunch sessions for those interested in submitting ballot arguments.

Wong further declared that she adhered to a strict and consistent policy of enforcing the various deadlines imposed on candidates and others for filing

---

[1]Specifically, the sign stated in part: "PUBLIC INSPECTION OF VOTER PAMPHLET [¶] All material to be printed and distributed to voters with the Voter Information Pamphlet and Sample Ballot is placed on file in the Office of the Registrar of Voters for public inspection, for at least ten days. [¶] The ten day inspection periods are as follows: *Candidates' Statements & Nomination Papers, Ballot Simplification Committee Digests, Controller's Statements, and Proponents' and Opponents' Direct Arguments, Wed. 8/24 - Fri. 9/2. . . ."

documents in her office. In virtually every election she was asked to make exceptions to the deadlines and in each instance the person presented what he or she considered a good faith reason why the exception should be allowed. However, in her view, the only way to treat everyone fairly and equally is to consistently apply the rules, which means relying upon and enforcing deadlines.

Wong's predecessors followed the same policy, rejecting, among other things, the nomination papers of former board of education member Ben Tom, former Lieutenant Governor Leo McCarthy's sponsor certificate on behalf of supervisorial candidate Angela Alioto, and an opposition argument to a charter amendment which a labor organization sought to submit after the deadline.

The trial court ordered that a peremptory writ of mandate issue directing Registrar Wong to accept for filing Barnes's argument in opposition to Proposition K. In so ruling the court found "that the Registrar acted properly in strictly enforcing the deadline imposed by section 5.74.3, and that the sign the Registrar of Voters had posted in her office, entitled 'Public Inspection of Voter Pamphlet,' was not misleading as to the noon, August 23rd deadline for filing proponents' and opponents' arguments. Nonetheless, given that petitioner's proposed argument was submitted on the same date that it was due and five hours beyond the deadline as the result of a good faith misunderstanding, and was available in the Registrar's office for public review prior to the time that the file was opened for public examination, and that real party in interest has had an opportunity to review petitioner's argument in opposition, and that no other official argument against Proposition K was submitted, and that this court has determined that there is an overriding public interest in providing San Francisco voters with a balanced and informative statement of the conflicting positions concerning the advisability of adopting the ballot measure, this court concludes that the peremptory writ of mandate should issue." The registrar petitioned this court unsuccessfully for a writ of mandate; this appeal followed.

## II. Discussion

A writ of mandate will lie "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled . . . ." (Code Civ. Proc., § 1085.) The two requirements for mandamus thus are (1) a clear, present and usually ministerial duty on the part of the respondent, and (2) a clear, present and beneficial right in the petitioner to performance of that duty. (*Hutchinson* v.

*City of Sacramento* (1993) 17 Cal.App.4th 791, 796 [21 Cal.Rptr.2d 779].) And, while mandamus is not available to control the discretion exercised by a public official or board, it is available to correct an abuse of discretion by such party. (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 344 [124 Cal.Rptr. 513, 540 P.2d 609].)

▮ The City contends the court erred in issuing the writ because no ministerial duty existed on the part of Registrar Wong to accept the late papers. We agree.

The duty of the registrar, as set down in the San Francisco Administrative Code, was to accept ballot arguments filed no later than noon on August 23d. The ordinance is clear: the arguments *"must be submitted"* not later than the time and date set forth therein. (Italics added.) *Sonoma County Nuclear Free Zone '86* v. *Superior Court* (1987) 189 Cal.App.3d 167 [234 Cal.Rptr. 357] speaks aptly to the inappropriate use of mandamus in a similar context. There, the trial court directed the county clerk to accept a late-filed argument against a local initiative. Under Elections Code section 3784, the clerk must "fix and determine a reasonable date prior to the election after which no arguments for or against any county measure may be submitted for printing and distribution . . . ." The citizens against the initiative who initially sought the writ argued that (1) the clerk had set unreasonable deadlines, *and* (2) the late filings were not prohibited if they would not infringe on the ballot printing process *because the electorate had a strong interest in access to the competing arguments for and against the initiative.* The reviewing court held that once the clerk reasonably exercised discretion and set the deadlines under Elections Code section 3784, the ". . . trial court generally has no power to order the clerk to accept a late argument for filing. Section 3784 clearly provides that 'no arguments for or against an initiative may be filed' after expiration of the deadline. The provision is mandatory and allows for no discretion, and the county clerk has a ministerial duty to enforce it. A court has no power to order a public official to commit an act in violation of a valid statute. The writ may only issue against a respondent with a clear duty to perform a ministerial act and with a legal authority to discharge that duty. . . . [¶] . . . The Clerk had a legal duty to enforce the statutory ban and could not ignore the clear mandate of the prohibition against acceptance of late filing. There was thus no basis for issuance of a writ on a theory of compelling performance of a ministerial act." (189 Cal.App.3d at p. 178.) Likewise, the trial court here erred in issuing the writ because Registrar Wong had properly performed her ministerial duty of enforcing the statutory ban on late arguments.

We note too that the ordinance does allow for the exercise of discretion to accept late filed papers, e.g., if the registrar finds a "good faith" mistake

about the deadline and concludes the other side will not be prejudiced by accepting a late filing. Moreover, sound policy underlies the Board's *legislative* determination not to provide for discretionary acceptance of late filings—hard and fast enforcement of filing deadlines avoids uneven and inconsistent administration of preelection procedures and is the most reliable way to ensure that everyone is treated fairly and equally.

The lower court's reason for granting the petition is no more than a substitution of the court's view of the most important public policy—ensuring that the public receive information on the conflicting positions concerning the proposed recycling ordinance—for that of the local legislative body's—promoting evenhanded administration of election laws by establishing firm filing deadlines. Our constitution delegates to chartered cities the power to enact elections law. Within that delegation of authority is the discretion to enact the type of law that makes sense for that particular community. The Board exercised its authority and discretion in enacting San Francisco Administrative Code section 5.74.1 et seq. █ "[I]t is well settled that although a court may issue a writ of mandate requiring legislative or executive action to conform to the law, it may not substitute its discretion for that of legislative or executive bodies in matters committed to the discretion of those branches." (*Common Cause* v. *Board of Supervisors* (1989) 49 Cal.3d 432, 445 [261 Cal.Rptr. 574, 777 P.2d 610].) Stated somewhat differently, the "writ of mandate 'is not a writ of right to be freely issued whenever a court disagrees with the policy of the administrative action.' " (*California State Auto. Assn. Inter-Ins. Bureau* v. *Garamendi* (1992) 6 Cal.App.4th 1409, 1423 [8 Cal.Rptr.2d 366].) The same can be said when the court decree conflicts with the implied legislative policy.

█ Nevertheless Barnes argued below that the writ should issue because he had substantially complied with the deadline rules. The doctrine of substantial compliance does not apply. Cases specifically dealing with statutory deadlines for election filings that are couched in language requiring documents to be filed "not less" than or "not later" than a given number of days before a designated time have insisted on strict compliance with the deadlines. (*Steele* v. *Bartlett* (1941) 18 Cal.2d 573, 574 [116 P.2d 780]; *Griffin* v. *Dingley* (1896) 114 Cal. 481, 482 [46 P. 457].) In *Bartlett*, a writ of mandate issued to compel the city clerk to omit names from the ballot. There, the candidates filed nomination papers on the Monday following the Sunday which was the last day to file papers under a statute requiring that papers be filed "not later than" noon on the 31st day before the election. Similarly, in *Dingley* no writ issued in favor of a candidate who filed papers 28 days before the election where the statute required them to be filed "not less than" 30 days before the election and the 30th and 29th days were a

Sunday and holiday, respectively. In the same vein, the language here called for submission of ballot arguments "not later than noon" of the 77th day preceding the election.

*Committee for Sewer Referendum* v. *Humboldt Bay Wastewater Authority* (1978) 77 Cal.App.3d 117 [143 Cal.Rptr. 463], which Barnes relied on below, does not apply. There, a citizens' committee brought an action for reverse statutory validation under Code of Civil Procedure section 863 (section 863) asserting that their referendum petition had been filed in substantial compliance with the relevant time and place requirements. The committee presented the petition on time but lodged it in the wrong office at the direction of the county clerk. At that time, officials of the agency where the petition should have been filed also were unaware of the proper filing location. Under these circumstances and given the judicial policy to liberally construe the powers of referendum and initiative, the reviewing court affirmed the finding of substantial compliance. (77 Cal.App.3d at pp. 122-123.) Substantial compliance was an appropriate consideration in the section 863 action; it is not an appropriate consideration in mandamus where the predicate inquiry is whether there is (1) a present ministerial duty on the part of the officer in question that must be exercised or (2) an official abuse of discretion ripe for correction. Neither predicate existed and thus the extraordinary remedy should not have been granted.

## III. Disposition

There was no basis for issuing the peremptory writ. Nonetheless, because the election has long passed it would now be academic to reverse the judgment and order the trial court to enter judgment denying the petition. For this reason only, we affirm the judgment.

Poché, J., and Perley, J., concurred.