661 So.2d 914 (1995)
Hannelore KURNIK, Appellant,
v.
DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, and Agency for Health Care Administration, Appellees.
No. 93-3079.
District Court of Appeal of Florida, First District.
October 18, 1995.
*915 Miriam Harmatz of Legal Services of Greater Miami, Inc., Miami, for Appellant.
Julia P. Forrester of Agency for Health Care Administration, Tallahassee; Bonnie G. Katz of Department of Health and Rehabilitative Services, Miami, for Appellees.
MINER, Judge.
In this appeal, appellant, Hannelore Kurnik, challenges an order of a client appeal hearing officer affirming an administrative decision of the Florida Department of Health and Rehabilitative Services (HRS) which denied to Ms. Kurnik direct reimbursement of out-of-pocket medical expenses she incurred during the period December, 1991 through January, 1993. For the reasons that follow, we reverse and remand with directions.
Since 1973, Ms. Kurnik has been totally disabled by a pulmonary condition. Subsequently, she was visited with other health-threatening conditions including cancer, arthritis, and a debilitating skin condition. She receives Social Security disability and Medicare benefits. Her medical conditions require certain prescription drugs each month that are not paid for by Medicare. Her monthly income amounts to $628 in Social Security disability payments, and the cost of her prescribed medication approximates $750 per month.
On December 3, 1991, appellant went to the Dade County HRS office to apply for enrollment in the Medically Needy Medicaid Program to help offset the expenses of her monthly medication.[1] During her visit, the HRS caseworker requested that Ms. Kurnik send certain documentation to the office, and appellant complied. However, this representative failed to inform appellant of all the documentation required and did not advise her that a formal application would have to be filed. After a number of phone calls and letters over a period of several months to the HRS office requesting information and help yielded either no response or misinformation, Ms. Kurnik requested a hearing. This hearing request triggered assurance from HRS that appellant would forthwith receive an application form on which to formally apply for benefits under the Medicaid Program. When no such application was received, appellant continued to contact HRS by phone and letter requesting assistance but to no avail. Finally, on May 5, 1992, despite her worsening medical condition, she once again returned to the HRS office and completed the formal application for financial assistance with her medical bills. When she was finally able to apply, appellant reminded the HRS representative that she had been trying to apply for benefits since early December of the previous year. She was told that her benefits would be retroactive to December 3, 1991. Although she had been paying for her own medication during the entire period, she was not told at the time she applied that, under HRS rules, the agency could only reimburse for unpaid bills and that reimbursement could only be made to the provider. Finally, on August 10, 1992, more than nine months after she first attempted to apply, HRS found that appellant was eligible for Medicaid assistance and enrolled her in the program. In so doing, the agency determined *916 that her share of cost was $352 per month[2]
On September 14, 1992, appellant was told for the first time that only providers could be reimbursed and that she could not be reimbursed for out-of-pocket expenditures for needed medications. At that same time, she was given erroneous information, never corrected despite repeated requests for correct information, about where her pharmacist should file for reimbursement. At that same time, however, HRS made an incorrect determination that she had only met her share of cost in January and February of 1992. A corrected determination that appellant had also met her share of cost for the months of March, April, May, June and July of 1992 was not made by HRS until February of 1993.
During the time period in question, Ms. Kurnik was obliged to charge $1,687.96 on a credit card for prescription medication that would have been covered by the Medicaid Program for which she was eligible.
On April 13, 1993, the hearing earlier requested by appellant was held. Ms. Kurnik was the only witness to give evidence.[3] In addition to her live testimony, she presented documentation of her efforts to apply and qualify for enrollment in the medically needy program. This documentation took the form of copies of unanswered letters pleading for assistance, dates and times and the substance of telephone conversations with HRS representatives, a log of dates and times of unanswered phone calls, and medical bills incurred. On August 31, 1993 an order was issued upholding HRS's denial of direct reimbursement to Ms. Kurnik. In this respect, the hearing officer found that appellant attempted to apply for assistance under the Medically Needy Medicaid Program in early December of 1991, but "was not able to sign and date an application until May 5, 1992." The hearing officer further found that appellant's formal application for assistance was not processed by HRS until August 20, 1992, some three and one-half months after it was filed, and that HRS deemed the application to have been made on December 12, 1991. These periods were well beyond the 45 day "timely" determination standard prescribed by federal regulations.[4] Notwithstanding such findings, the hearing officer found that HRS rules prohibited reimbursement payments directly to recipients. From that determination, this timely appeal ensued.
Because Florida has elected to participate in the federal Medicaid program established under Title XIX of the Social Security Act, 42 U.S.C. § 1396, et seq., the state must comply with the requirements imposed by the Act and the implementing federal regulations. Atkins v. Rivera, 477 U.S. 154, 157, 106 S.Ct. 2456, 2458, 91 L.Ed.2d 131 (1986), Crider v. State Department of Health and Rehabilitative Services, 555 So.2d 408, 409 (Fla. 1st DCA 1989). At the time this case arose, the Florida Medicaid Program was administered by HRS. Since July 1, 1993, the program has been administered by the Agency for Healthcare Administration (AHCA).
For purposes of our analysis, several sections of Chapter 42 of the U.S.Code come into play. For example, section 1396a(a)(3) of Chapter 42 requires the state Medicaid Program to provide a fair hearing before the agency "to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." Additionally, the program must "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8) (emphasis added).
In the case at bar, HRS eventually and correctly determined that appellant was eligible *917 for medically needy assistance and correctly accorded Ms. Kurnik the hearing to which she was entitled even though a decision had already been made that appellant was eligible for the benefits she sought. Although not allowing direct reimbursement to Ms. Kurnik for out-of-pocket medication expenditures, the hearing officer correctly found that HRS failed to process appellant's application in timely fashion. While not directly addressed by the hearing officer, the record would also fully support a finding that HRS did little to provide a timely opportunity for Ms. Kurnik to apply for such assistance in the first place. Appellant's Kafkaesque experience with that agency was characterized by no information, misinformation, unanswered letters, unreturned phone calls, unfulfilled promises, and classic bureaucratic runaround the sum total of which amounted almost to studied indifference if not purposeful neglect on the part of the agency.
On appeal, appellant argues that the hearing officer ignored 42 C.F.R. § 431.246 which she maintains requires that the relief she seeks be granted. That regulation provides, as follows:
The agency must promptly make corrective payments, retroactive to the date an incorrect action was taken, if 
(a) the hearing decision is favorable to the applicant or recipient; or
(b) the agency decides in the applicant's or recipient's favor before the hearing.
42 C.F.R. § 431.246 (1992).[5] In the instant case, HRS determined appellant's eligibility for the program prior to the hearing she requested.
While no Florida decision has construed this federal provision and the state's prohibition against direct payment to a Medicaid recipient contained in Florida Administrative Code Rule 10C-7.030(4) (now codified at 59G-1.002(4), Fla. Admin. Code) to determine whether a recipient may be reimbursed directly, the decision in Greenstein v. Bane, 833 F. Supp. 1054 (S.D.N.Y. 1993) is instructive. There, the plaintiffs were a class of New York Medicaid recipients or their representatives who had incurred out-of-pocket expenses for authorized Medicaid expenses because of agency error or delay, and at issue was the above-quoted corrective action regulation. The plaintiffs were granted summary judgment as to their contentions that the regulation includes an exception to the "vendor payment principle" so that payments may be made directly to a recipient and that full reimbursement is necessary and should not be limited to the Medicaid rate. Id. at 1065. Both the state and federal agencies involved argued unsuccessfully that because the corrective action regulation did not specify the recipient of the corrective payments, the "regulation must comply with Medicaid's general statutory requirements that payments be made to providers rather than recipients" and that payments must be made at the Medicaid rate. Id.
In Greenstein, the court examined a memorandum by the policy director of the federal Healthcare Financing Administration (HCFA), which is the arm of the federal Department of Health and Human Services that approves state Medicaid plans. This memorandum announces the determination that "States may make direct reimbursement to individuals who paid for services after an erroneous determination of ineligibility, which is reversed on appeal" as an exception to the vendor payment principle to correct such an inequitable situation. Greenstein at 1068. The court also examined and cited from HCFA's state manual which instructs states on how to provide corrective payments for erroneous denials. This manual describes HCFA policy to make direct payments to individuals who pay for medical services between the date of an erroneous denial and reversal of the determination as a "longstanding" exception to the vendor payment principle. The court stated that it was "bound to consider HCFA's policy of direct reinbursement" for an erroneous determination as the official interpretation of the corrective action regulation and found that the corrective action regulation is an exception to *918 the vendor payment principle. The court stated that it was
reasonable to construe the corrective action regulation as an exception to the vendor payment principle. While the vendor payment principle serves to promote provider participation in Medicaid, corrective payments made directly to recipients in no way hinders this objective. When Medicaid needs to make corrective payments, the provider has already been paid; it is only the recipient who requires reimbursement. Akin to the rationale justifying the vendor payment principle, if corrective payments were not made directly to the recipient, there would be no guarantee that he or she would actually be reimbursed for their payments. Therefore, this Court finds that not only is the corrective action regulation an exception to the vendor payment principle but direct payment in the corrective payment context is wholly consistent with the objectives of the vendor payment principle.
Id. at 1069.
More importantly, given the facts of the case at bar, the court in Greenstein also stated that corrective payments apply, not only to erroneous denials of eligibility, but also to wrongful delays in providing assistance.
Defendants appear to be arguing that, while the Chenet exception [the term applied to the HCFA's memo on direct payment to recipients] includes payments for erroneous denials, it should not be construed as an interpretation of the seemingly broader category of "corrective payments" under the corrective action regulation. They assert that the Chenet exception does not authorize direct reimbursement for expenses incurred as a result of agency delay. However, there is little, if any, difference between "corrective payments" and "payments for erroneous denials." Indeed, the State Manual section explaining how to make payments for erroneous denials is entitled "Direct Reimbursement by State's to Medicaid Recipients to Correct Erroneous Denials." State Manual § 6320. Corrective payments are, essentially, what are needed to rectify an erroneous agency determination. Whether the agency has actually made a mistake by improperly denying assistance to a recipient or whether the agency delays assistance to one who is rightfully qualified for Medicaid, the agreed Medicaid beneficiary will have incurred expenses that need to be reimbursed.
Id. at fn. 10.
In Lustig v. Blum, 80 A.D.2d 558, 435 N.Y.S.2d 350 (1981), the court had occasion to consider New York's Medicaid rule requiring that eligibility be determined within thirty days from application and the rule that payment is only permitted to providers. In Lustig there was a seven month delay in making an eligibility determination. The court required full reimbursement to the recipient and noted that the agency's vendor payment defense had previously been rejected by New York courts. Id. 435 N.Y.S.2d at 351.
In the case at bar, we find that Ms. Kurnik's right to apply and have her application processed in timely fashion was inexplicably and inexcusably delayed by HRS. We further find that the reasoning of the Greenstein and Lustig courts is persuasive on the issue of direct reimbursement to Ms. Kurnik and that the hearing officer erred in rejecting appellant's argument that the federal "corrective payment" regulation overrode the state's vendor payment regulation. The state's policy which provides for direct payment to recipients in the case of erroneous denials of eligibility but expressly prohibits payment for expenses incurred before erroneous denial simply does not address appellant's situation. Accordingly, we hold that when the state agency's determination of Medicaid eligibility is unreasonably delayed in contravention of one's rights under federal statute and regulation to reasonably prompt assistance in making application and in timely determination of eligibility, such person is entitled to be made whole for out-of-pocket expenditures made before eligibility is determined.
Reversed and remanded with directions that appellant be promptly reimbursed by *919 AHCA for the expenditures she claimed below.
BOOTH and JOANOS, JJ., concur.
NOTES
[1] Upon returning home on December 3, 1991, Ms. Kurnik followed up her personal visit with a telephone call and a letter directed to the HRS caseworker with whom she had spoken during her visit. This letter summed up her medical problems and her financial need and strongly suggested her entitlement to be enrolled in the medically needy program.
[2] "Share of cost" represents the amount of medical expenses that an enrolled individual must incur before receiving Medicaid benefits. If, in a given month, a medically needy person incurs medically necessary expenses equal to that individual's share of cost, then that person becomes eligible for Medicaid benefits for the remainder of that month.
[3] To date, HRS has not offered any explanation for the delay in affording appellant an opportunity to apply for medically needy assistance and in processing her application.
[4] See 42 C.F.R. § 435.911(a)(2).
[5] This regulation was amended November 30, 1992, with the addition of the phrase "and, if appropriate, provide for admission or readmission of an individual to a facility" following taken and preceeding if in the first paragraph.