[No. A093003. First Dist., Div. Three. Sept. 30, 2002.]

KEVIN CONLAN et al., Plaintiffs and Appellants, v.
DIANA M. BONTA´, as Director, etc., et al., Defendants and
Respondents.

748

**COUNSEL**

Bay Area Legal Aid, Michael D. Keys; Neighborhood Legal Services of Los Angeles County, Michele Melden; Western Center on Law & Poverty, Richard A. Rothschild and Robert D. Newman for Plaintiff and Appellants.

Bill Lockyer, Attorney General, James M. Humes and Ralph M. Johnson, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**POLLAK , J.**—Petitioners and appellants (petitioners) are three beneficiaries of California's Medi-Cal program, a state-administered participant in the federal Medicaid program. Petitioners Asher Schwarzmer and Kevin Conlan requested and received fair hearings at which each asked an administrative law judge (ALJ) to order the State Department of Health Services (DHS or the Department) to reimburse him directly for covered expenses that he had paid while his Medi-Cal application was pending. Petitioner Thomas Stevens requested a fair hearing to recover reimbursement for copayments he had erroneously paid his provider. Although there is no dispute as to whether each of the petitioners is entitled to reimbursement, their claims were dismissed on the ground that reimbursement must be obtained from the provider of the services and that there is no procedure under which a

Medi-Cal recipient may obtain reimbursement directly from DHS. The petitioners' application for a writ of mandate in the superior court, sought under Code of Civil Procedure sections 1094.5 and 1085, was denied on much the same ground. We conclude that the state has failed to establish a reasonable procedure by which recipients may obtain prompt reimbursement for covered services for which they paid during the three months prior to applying for Medi-Cal coverage, as required by federal law, and that DHS therefore should have been ordered to take appropriate measures to ensure that at least two of the petitioners receive their reimbursement.

FACTS[1]

Petitioner Asher Schwarzmer applied for Supplemental Security Income/State Supplementary Program (SSI/SSP) in August 1992, and benefits were granted to him in August 1994. He was then granted Medi-Cal benefits retroactive to May 1992. From 1993 to 1994, while awaiting a decision on his SSI/SSP application, Schwarzmer paid for office visits with his provider. After Schwarzmer was granted retroactive benefits, the provider wrote multiple letters to DHS seeking payment for the services for which Schwarzmer had paid, so that Schwarzmer could be reimbursed, but despite persistent appeals has not been entirely successful in obtaining these payments and therefore has not fully reimbursed Schwarzmer.[2] Schwarzmer sought direct reimbursement from DHS. After a hearing, the ALJ denied his request for direct reimbursement on the ground that the Department lacked jurisdiction. The ALJ stated that Schwarzmer's remedy was to have the provider pursue the "provider appeal process." The ALJ reasoned that "[s]tate hearings are limited in jurisdiction to disputes between applicants and recipients of aid and the DHS or county welfare departments. The claimant's primary complaint concerns reimbursement from a provider and that provider's problems with the fiscal intermediary. . . . [¶] Nor is there any authority in state law or state regulation to order the state to circumvent the fiscal intermediary and pay the claimant directly for his out of pocket expenses."

In 1997, petitioner Kevin Conlan applied for Aid to Families with Dependent Children (AFDC), a form of Medi-Cal benefit.[3] Conlan applied for these benefits as the father of an unborn child. He was not eligible for the

---

[1] There was no evidentiary hearing in the court below. We take the facts from the decisions of the hearing officers, which were attached as exhibits to the petition for writ of mandate, and from the joint appendix in lieu of a clerk's transcript.

[2] The record does not indicate the amount of reimbursement to which Schwarzmer originally was entitled, but suggests that the amount still due him is approximately $82.

[3] AFDC has since been amended and renamed "CalWORKs," which stands for "California Work Opportunity and Responsibility to Kids" (Welf. & Inst. Code, § 11200).

benefits until the child was born so the application was not processed immediately. The child was born in October 1997, and the application was granted in April 1998. Once granted, Conlan's benefits were retroactive to October 1997. After he received his Medi-Cal card, he presented it to his medical provider and requested that the provider bill DHS for the services that Conlan had already paid for, but the provider refused to do so. Conlan requested a hearing with DHS to seek reimbursement for $2,196 in medical bills that he had been required to pay while his application was pending. Conlan testified at the hearing that he did not wish to file a complaint against the provider for fear of jeopardizing their relationship. As of the date of the hearing, Conlan had not requested direct reimbursement from DHS, but before the ALJ issued a decision, he contacted both DHS's fiscal intermediary and DHS itself to request reimbursement. Both indicated that they would not directly reimburse Conlan and insisted that he seek reimbursement through his medical provider. Conlan was told that if his provider refused to cooperate, the only remedy was to file a complaint with the Department. Thereafter, his request for direct reimbursement was dismissed by the ALJ on the ground that there was no jurisdiction to order DHS to pay Conlan directly. The ALJ ruled: "It is undisputed that there is currently no procedure available to the claimant to request or obtain direct reimbursement from DHS or the county for the medical payments made by the claimant. Therefore, the county is correct in not assisting the claimant with obtaining reimbursement directly from DHS."

From August 1994 through June 1996, petitioner Thomas Stevens made approximately $1,374 in copayments for prescription medications. During this time, he was insured by a Blue Cross Health Maintenance Organization and participated in the Health Insurance Premium Payment Medi-Cal Program (HIPP). Under HIPP, Medi-Cal pays insurance premiums for individuals who had private insurance prior to becoming eligible for Medi-Cal benefits. Recipients thus avoid a disruption in benefits. As a participant in HIPP, Stevens was not obligated to make drug copayments of more than one dollar. He did not become aware of this fact, however, until June 18, 1996, when he called a Medi-Cal information line. On June 19, 1996, Stevens requested a hearing, asking that DHS reimburse him directly for the copayments he erroneously made. DHS argued that Stevens had notice of the copay provisions in the booklet "Medi-Cal, What It Means To You" and that the pharmacy had been issued guidelines explaining Medi-Cal coverage of copayments and refunds of copayments erroneously collected. The ALJ denied Stevens's request for direct payment on the ground that his dispute

was with his provider, not with DHS, and that there is no authority for ordering direct payments to a Medi-Cal recipient.[4]

## PROCEDURAL HISTORY

After denial of their fair hearing claims, petitioners jointly brought a petition for writ of mandate in San Francisco Superior Court. The petition was framed as one for both administrative mandamus under Code of Civil Procedure section 1094.5 and ordinary mandamus under Code of Civil Procedure section 1085. In their petition under section 1094.5, petitioners asked the court to order DHS to directly reimburse them for the covered out-of-pocket expenses they paid. Under section 1085, petitioners asked the court to "compel respondents to ensure that Medi-Cal recipients who incur out-of-pocket medical expenses during the period of time covered by their Medi-Cal eligibility and which are eligible for coverage by Medi-Cal are able to secure reimbursement of these costs by means of corrective payments."

The trial court concluded that "[t]he exclusive remedy to attack the legality of [the] decisions is pursuant to CCP 1094.5 . . ." and that "Petitioners are not entitled to ordinary mandamus review." The court denied the petition, holding that the failure to provide direct reimbursement did not violate the "promptness" requirement of Welfare and Institutions Code section 10000, the "amount of aid" provisions of section 10500, the fair hearing provisions of section 10950, or the corrective payment provision of 42 Code of Federal Regulations part 431.246 (2001). The court further held that Welfare and Institutions Code section 14019.3, which provides that in cases such as these, the recipient "shall be entitled to a refund from the provider," requires that reimbursement be made by the medical provider and satisfies the Department's statutory mandate to make medical assistance available.

## DISCUSSION

*Petitioners Are Entitled to Seek Appropriate Relief Under Both Code of Civil Procedure Sections 1094.5 and 1085*

■ Although this petition was properly presented under Code of Civil Procedure section 1094.5, relief is also available under section 1085 for reasons that will be explained in the discussion that follows. Administrative

---

[4]Petitioners include in their briefs facts concerning a man named John Silva. Mr. Silva's grievance was not included in the petition below. Other than a declaration filed in the trial court, we have no record concerning his situation and do not consider it on appeal.

mandamus under section 1094.5 is appropriate to inquire "into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal. . . ." (Code Civ. Proc., § 1094.5, subd. (a).) By comparison, a writ of mandate under section 1085 is available where the petitioner has no plain, speedy and adequate alternative remedy; the respondent has a clear, present and usually ministerial duty to perform; and the petitioner has a clear, present and beneficial right to performance. (*Unnamed Physician v. Board of Trustees of Saint Agnes Medical Center* (2001) 93 Cal.App.4th 607, 618 [113 Cal.Rptr.2d 309]; *Payne v. Superior Court* (1976) 17 Cal.3d 908, 925 [132 Cal.Rptr. 405, 553 P.2d 565]; *Barnes. v. Wong* (1995) 33 Cal.App.4th 390, 394 [39 Cal.Rptr.2d 417]; *San Gabriel Tribune v. Superior Court* (1983) 143 Cal.App.3d 762, 771 [192 Cal.Rptr. 415].) Where a petition challenges an agency's failure to perform an act required by law rather than the conduct or result of an administrative hearing, the remedy is by ordinary mandate pursuant to Code of Civil Procedure section 1085, not by administrative mandate pursuant to section 1094.5. (*Wellbaum v. Oakdale Joint Union High School Dist.* (1977) 70 Cal.App.3d 93, 96 [138 Cal.Rptr. 553].)

The petition in this case challenges both the results of the administrative hearings denying petitioners the direct reimbursement they seek, and the agency's practice of refusing to directly reimburse Medi-Cal recipients under circumstances in which DHS assertedly is required to do so. There is no question that the petition is appropriate under Code of Civil Procedure section 1094.5. Welfare and Institutions Code section 10962 provides that Medi-Cal applicants or recipients "may file a petition with the superior court, under the provisions of Section 1094.5 of the Code of Civil Procedure, praying for a review of the entire proceedings in the matter, upon questions of law involved in the case. . . ." The nature of a petition under section 1094.5 is to challenge a specific decision in an administrative hearing as to a particular individual. (*Lewin v. St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368 [146 Cal.Rptr. 892].) While this may be the appropriate remedy to review the fair hearing decision (*id.* at p. 383), section 1094.5 does not preclude a broader challenge to agency conduct or procedures alleged to breach the agency's statutory obligations (*Timmons v. McMahon* (1991) 235 Cal.App.3d 512 [286 Cal.Rptr. 620]). It is not inconsistent to award relief under both sections 1094.5 and 1085 of the Code of Civil Procedure. (See, e.g., *Fry v. Saenz* (2002) 98 Cal.App.4th 256 [120 Cal.Rptr.2d 30].) The petition in this case was properly framed as one for ordinary mandamus because petitioners allege that the agency has failed to act as required by law in failing to establish procedures for direct reimbursement of amounts owed recipients for covered services obtained prior to acceptance into the Medi-Cal program.

■ As to the standard of review, as the court in *McIntosh v. Aubry* (1993) 14 Cal.App.4th 1576, 1584 [18 Cal.Rptr.2d 680] observed: "distinctions between traditional and administrative mandate have little impact on this appeal because . . . the material facts were [undisputed], raising a purely legal question . . . . We exercise independent judgment in that situation, no matter whether the issue arises by traditional or administrative mandate."

*Schwarzmer and Conlan Are Entitled to Recover Reimbursement from DHS*

Medicaid is a cooperative federal-state program established by Congress in 1965 with the enactment of title XIX of the Social Security Act, 42 United States Code section 1396. "The program is designed to provide necessary medical services to poor people who had previously been denied access to medical care. Like private insurance, Medicaid furnishes coverage to eligible individuals and pays providers of health care for services rendered." (*Salazar v. District of Columbia* (D.D.C. 1996) 954 F.Supp. 278, 280, fn. 3.) California's Medicaid program is called Medi-Cal, and is administered by DHS. (Welf. & Inst. Code, §§ 10721, 14000 et seq.) ■ State participation in Medicaid is voluntary but if a state participates, it must comply with the federal statutes and regulations governing the programs. (*Wilder v. Virginia Hospital Assn.* (1990) 496 U.S. 498, 502 [110 S.Ct. 2510, 2513-2514, 110 L.Ed.2d 455].)

Among the many requirements of federal law, states that participate in Medicaid must provide qualifying individuals coverage for services received during the three months prior to applying for benefits if the individual was eligible for benefits during that period. (42 U.S.C. § 1396a(a)(34); 42 C.F.R. § 435.914 (2001).) This is called the "retroactivity period." For a variety of reasons, qualifying individuals often will obtain covered services during that 90-day period. If they pay for those services, they become entitled to prompt reimbursement once they receive their Medi-Cal card and are accepted into the program. Although there are no reported California cases on the subject, decisions in several other jurisdictions make clear that the state programs must include provisions to ensure that these individuals are able to recover the reimbursement to which they are entitled. (*Blanchard v. Forrest* (5th Cir. 1996) 71 F.3d 1163 (*Blanchard*); *Salazar v. District of Columbia, supra,* 954 F.Supp. 278; *Greenstein by Horowitz v. Bane* (S.D.N.Y. 1993) 833 F.Supp. 1054 (*Greenstein*); *Cohen by Cohen v. Quern* (D.C.Ill. 1984) 608 F.Supp. 1324; *Kurnik v. Dept. of Health & Rehab. Serv.* (Fla.Dist.Ct.App. 1995) 661 So.2d 914; *Krieger v. Krauskopf* (1986) 121 A.D.2d 448 [503 N.Y.S.2d 418]; *Lustig v. Blum* (1981) 80 A.D.2d 558 [435 N.Y.S.2d 350].)

■ It is not sufficient for the state to rely on the providers to reimburse the Medicaid recipient voluntarily. (*Blanchard, supra,* 71 F.3d 1163.) Doing

so would violate the so-called comparability provision of federal law. A state that participates in Medicaid must provide comparable medical services to every participant. "[T]he medical assistance made available to any individual . . . . [¶] . . . shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual . . . ." (42 U.S.C. § 1396a(a)(10)(B).)[5] If reimbursement by the provider were voluntary, not all program recipients would be treated alike. Those who had not paid for covered services during the retroactivity period would receive coverage because the program would pay the provider's claim once submitted. However, those recipients who had paid for the services would not receive coverage unless their provider voluntarily reimbursed them. Rather than seeking payment from the Medicaid program and reimbursing the recipient, many providers may be expected to prefer to retain the payment received from their patient. Not only will this be simpler for the provider, but since the Medicaid program often pays less than the full price charged the patient, frequently there will be a financial disincentive for the provider to request the payment from the program rather than retaining the payment received from the patient. (*Blanchard, supra,* 71 F.3d at p. 1167 ["Because Medicaid rates are usually much lower than the rates providers charge private patients, Medicaid providers in Louisiana have a disincentive to provide voluntary refunds to patients determined to be Medicaid-eligible after the services or supplies were furnished"]; *Cohen by Cohen v. Quern, supra,* 608 F.Supp. at p. 1331 ["because the private pay rate for medical providers is higher than the Medicaid rate, providers generally do not volunteer to make such refunds"].)

Every case brought to our attention in which the court was presented with an application for relief by a Medicaid recipient who had not received voluntary reimbursement for covered services obtained during the retroactivity period has provided relief. In some cases, the court has ordered the state agency to make reimbursement directly to the recipient, rejecting the agency's argument that the direct payment violates the so-called vendor payment principle discussed more fully below. (*Krieger v. Krauskopf, supra,* 503 N.Y.S.2d at p. 420 ["[W]e perceive of no legally valid basis for denying the petitioner direct reimbursement in the instant matter"]; *Kurnik v. Dept. of Health & Rehab. Serv., supra,* 661 So.2d at pp. 918-919; *Lustig v. Blum, supra,* 435 N.Y.S.2d 350.) Other cases have indicated that a state also may satisfy the comparability requirement by making reimbursement by the provider obligatory rather than voluntary. (*Blanchard, supra,* 71 F.3d at p. 1169 [the department " 'shall establish a mechanism to provide coverage for bills for medical care, supplies and services during the retroactive coverage

---

[5]The medical assistance referred to in the comparability provision includes "payment of part or all of the cost of the [covered] care and services . . . ." (42 U.S.C. § 1396d(a).)

period . . .' . . . . 'The defendant can remedy its violation by choosing to either require providers to refund payments received for services provided during the retroactive eligibility period and to then submit their claims to Medicaid, or to reimburse recipients directly for these expenses' "]; *Cohen by Cohen v. Quern, supra,* 608 F.Supp. at p. 1332 [the department "must compel those providers to refund the amounts paid and accept payment by the state as a condition of further participation"].)

The Department contends that California satisfies the comparability requirement by virtue of Welfare and Institutions Code section 14019.3. This section was enacted to remedy a similar problem to the one faced by Schwarzmer and Conlan. The legislation was introduced in response to a request from a man whose 96-year-old mother was living in a nursing facility. When her private funds were nearly exhausted, she applied for Medi-Cal assistance. She was approved three months later, retroactive to the date of her application, but the nursing home administrator refused to bill Medi-Cal for $1,857 in expenses incurred by the family between application and date of approval. The nursing home administrator informed the family that the home had a firm policy against retroactive billing because of the bureaucratic red tape involved. (Assem. Com. on Health, Analysis of Assem. Bill No. 2605 (1975-1976 Reg. Sess.) Jan. 6, 1976.) The analysis of the bill reveals the following discussion: "Existing law does not require a provider to bill Medi-Cal for services rendered to a beneficiary. Since eligibility may be established retroactively for up to three months from the date of the application, there are instances where the beneficiary has already made payment to the provider for services for which he has subsequently become Medi-Cal eligible. The provider however has the option of retaining the payments already made or billing Medi-Cal for the previously provided eligible services. [¶] AB 2605 would require a provider to submit a claim for reimbursement for services rendered to a Medi-Cal applicant who subsequently becomes eligible for Medi-Cal benefits . . . ." (Sen. Com. on Health and Welfare, Staff Analysis of Assem. Bill No. 2605 (1975-1976 Reg. Sess.) as amended June 9, 1976.)

Welfare and Institutions Code section 14019.3 obligates the provider to return payments to recipients once the provider has obtained reimbursement for those payments from the Department. This section provides in part that: "(a) A beneficiary or any person on behalf of the beneficiary who has paid for health care services otherwise covered by the Medi-Cal program received by the beneficiary shall be entitled to a return *from the provider* of any part of the payment which meets all of the following: [¶] (1) Was rendered during any period prior to the receipt of his or her Medi-Cal card, for which the card

authorizes payment under Section 14018 or 14019. [¶] (2) Was reimbursed to the provider by the Medi-Cal program, following all audits and appeals to which the provider is entitled. [¶] (3) Is not payable by a third party under contractual or other legal entitlement. [¶] (4) Was not used to satisfy his or her paid or obligated liability for health care services or to establish eligibility. [¶] . . . [¶] (e) The provider shall return any and all payments made by the beneficiary . . . *upon receipt of Medi-Cal payment*." (Italics added.)

The Department contends, as the ALJ's and superior court held, that under Welfare and Institutions Code section 14019.3, recovery from the provider is the exclusive means by which a recipient may obtain reimbursement. While we see nothing in the language or history of the statute that suggests the Legislature intended to make this the exclusive remedy, it is unquestionably true that no provision in the Welfare and Institutions Code or the governing regulations establishes a procedure for the recipient to obtain reimbursement directly from the Department. Thus, the question that must be addressed is whether section 14019.3 is sufficient to satisfy the comparability requirement. The question must be answered pragmatically. The issue is not whether the statute creates an abstract right on the part of the recipient to obtain reimbursement from the provider, but whether a process has been established that offers reasonable assurance that the right will be respected, and that needy recipients entitled to reimbursement will receive the amounts to which they are entitled in a timely manner. If the latter is not the case, those recipients who have paid for covered services during the retroactivity period will continue to receive less in benefits than those who did not advance payment, in violation of the comparability requirement. (*Blanchard, supra,* 71 F.3d at pp. 1167-1168.)[6]

Although Welfare and Institutions Code section 14019.3 provides that the beneficiary is "entitled to a return from the provider" of amounts paid for covered services during the retroactivity period, and the provider "shall return" payments made by the beneficiary upon receipt of the Medi-Cal payment, neither the statute nor the regulations provide any means by which to implement or enforce the beneficiary's rights. The Department contends that compliance with section 14019.3 is assured by its authority under

---

[6]Since we conclude that the current provisions are insufficient to satisfy the requirements of federal law, it is unnecessary to decide whether the same result would be required independently by Welfare and Institutions Code section 10000 ("aid shall be administered and services provided promptly and humanely") or section 10500 (DHS must perform its duties "in such a manner as to secure for every person the amount of aid to which he is entitled"). However, the conclusion we reach certainly is consonant with the import of those provisions.

section 14123.[7] to discipline providers who do not comply with their Medi-Cal obligations,[7] and by the Department's authority under its regulations to recover overpayments to providers.[8] But these provisions plainly do not address the problem.[9]

The Department concedes it does not monitor provider reimbursement. While a beneficiary who fails to obtain reimbursement from the provider presumably may complain to the Department, the statute and the regulations fail to specify how the complaint process may be initiated by a recipient. If a complaint is filed, there are no regulations governing how such complaints are to be handled. Even if a beneficiary succeeded in filing a complaint and DHS took action against the provider, this process would not result in a refund to the recipient. Under Welfare and Institutions Code section 14123, disciplinary proceedings may result in disqualification of the provider from the Medi-Cal program, but this would not provide reimbursement to the beneficiary (and in fact could be detrimental to the Medi-Cal recipient who would lose the services of the provider). Moreover, it is not at all clear that the regulation governing recovery of overpayments applies to overpayments by a recipient rather than by DHS or, indeed, that the retention of the amount paid by the recipient can even be considered an overpayment if the provider has not also been paid by Medi-Cal. Assuming that the regulation applies, it provides only for recovery of the money by DHS, but contains no mechanism for getting the recovered money to the recipient. To the contrary, the Department has taken the position in this case that it is prohibited from refunding money directly to recipients. Therefore, even if DHS were to undertake recovery of moneys paid by recipients under the existing regulation, it still would not accomplish the ultimate goal of making the recipients whole for their out-of-pocket expenses.

---

[7] Welfare and Institutions Code section 14123 provides that "[p]articipation in the Medi-Cal program by a provider of service is subject to suspension in order to protect the health of the recipients and the funds appropriated to carry out this chapter" and that "[t]he director may suspend a provider of service from further participation under the Medi-Cal program for violation of any provision of this chapter . . . or any rule or regulation promulgated by the director . . . ."

[8] California Code of Regulations, title 22, section 51458.1, entitled "Cause for Recovery of Provider Overpayments," provides that "The Department shall recover overpayments to providers . . . ." The regulation lists 13 nonexclusive instances in which DHS may recover overpayments. The list includes such examples as payments made in excess of allowable costs and payments made based on false or incorrect claims or cost reports from providers. It does not include any instances in which an overpayment is made by the recipient of services rather than by the Department. It does provide a catch-all section that states that payments may be recovered if they are determined to be "[i]n violation of any other Medi-Cal regulation where overpayment has occurred."

[9] In denying the Stevens application, the ALJ also made reference to the grievance procedure in California Code of Regulations, title 22, section 51015. However, this procedure applies only to grievances arising under the Medical Assistance Program and in all events is available only to providers and not to recipients.

There is yet another fundamental flaw in the current provisions. Under Welfare and Institutions Code section 14019.3, the provider is obligated to reimburse the beneficiary only after it has been paid for the services by the Department. The statute does not explicitly obligate the provider to request such payment from DHS, but assuming that such an obligation is implicit, to what lengths is the provider obligated to go to obtain the payment? If the Department denies or fails to act upon the request, the beneficiary will obtain reimbursement only if the provider appeals, which section 14019.3 certainly does not obligate the provider to do. Therefore, the beneficiary's ability to obtain reimbursement remains dependent on voluntary action by the provider, contrary to its own best interests, and section 14019.3 fails to correct the very deficiency recognized in *Blanchard, supra,* 71 F.3d 1163, and the numerous other cases cited above.

The experiences of Mr. Schwarzmer and Mr. Conlan illustrate the problem. The administrative record contains several letters over a period of more than a year from Schwarzmer's provider attempting to obtain reimbursement for payments made to the provider during the retroactivity period. To date, it has been over eight years since Schwarzmer's eligibility was established and as far as appears, the provider still has not been reimbursed in full by DHS and Schwarzmer has not been reimbursed by the provider. There is no basis for disciplining the provider, since he is not obligated to repay Schwarzmer until he is paid by DHS, and he has taken reasonable measures—apparently a good deal more than may be expected of many providers—to obtain payment from the Department. The provider is under no obligation to appeal further, and Scharzmer will not receive the reimbursement to which he is entitled unless and until such efforts are made.

While Conlan's provider has not been so forthcoming, his situation also demonstrates the inadequacy of the available remedies. Conlan requested reimbursement from his provider, which flatly refused to pursue reimbursement on his behalf. Although the provider's response may contravene Welfare and Institutions Code section 14019.3, in the Department's view Conlan's only recourse is to report the misconduct of his own provider to the Department, recognizing that even if discipline should be imposed it will not necessarily obtain for him the reimbursement to which he is entitled.

Petitioners contend that the federal corrective payment regulation, 42 Code of Federal Regulations part 431.246 (2001), compels the Department to promptly reimburse them for the covered services for which they paid during the retroactivity period. DHS, on the other hand, contends that the federal vendor payment requirements (42 U.S.C. § 1396a(a)(32); 42 C.F.R. §§ 447.10(d) & 447.25 (2001)), prohibit it from making reimbursement

directly to the recipient rather than to the vendor. Both contentions are mistaken, but these provisions do illuminate the proper resolution of the present controversy.

Individuals whose claims for medical assistance are denied or not acted upon with reasonable promptness are entitled to a "fair hearing" to challenge the denial (42 U.S.C. § 1396a(a)(3); *Greenstein, supra,* 833 F.Supp. at p. 1061), and the corrective action regulation requires the agency to "promptly make corrective payments, retroactive to the date an incorrect action was taken" if it is ultimately determined that the agency incorrectly denied coverage (42 C.F.R. § 431.246 (2001)). The corrective payments may be made directly to the Medicaid recipient. (*Greenstein, supra,* at p. 106.) Nonetheless, as the Department correctly argues, section 431.246 does not apply here since the Department did not incorrectly deny eligibility to any of the petitioners and their request for relief does not arise out of corrective action resulting from a fair hearing.

Under the "vendor payment principle," payment for Medicaid services generally may be made only to the provider. (42 U.S.C. § 1396a(a)(32); 42 C.F.R. §§ 447.10(d) and 447.25 (2001).) "The purpose of the vendor payment principle is to ensure that providers will be reimbursed for services they furnish recipients, thereby eliminating disincentives in providing such services based on the fear of nonpayment." (*Greenstein, supra,* 833 F.Supp. at p. 1060.) But, contrary to the position of the Department, the vendor payment principle is not inviolable. One exception that has been made to its application is with respect to corrective action payments. Although the federal regulation does not explicitly authorize making corrective payments directly to the recipient, payments that are due under its provisions can be made in this manner. "[I]t [is] reasonable to construe the corrective action regulation as an exception to the vendor payment principle. While the vendor payment principle serves to promote provider participation in Medicaid, corrective payments made directly to recipients in no way hinders this objective. When Medicaid needs to make corrective payments, the provider has already been paid; it is only the recipient who requires reimbursement. Akin to the rationale justifying the vendor payment principle, if corrective payments were not made directly to the recipient, there would be no guarantee that he or she would actually be reimbursed for their payments. Therefore, . . . not only is the corrective action regulation an exception to the vendor payment principle but direct payment in the corrective payment context is wholly consistent with the objectives of the vendor payment principle." (*Greenstein, supra,* 833 F.Supp. at p. 1069.)

While the corrective action regulation is not directly applicable in the present case, the reasoning in *Greenstein* is. (*Greenstein, supra,* 833

F.Supp. 1054.) The petitioners' entitlement to reimbursement does not result from an erroneous denial of eligibility, but the important similarity is that the provider has already been paid for its services, so that there is no need to apply the vendor payment principle. And the court in *Greenstein* held that if reimbursement were not made directly to the recipient, "there would be no guarantee that he or she would actually be reimbursed for their payments." (*Greenstein*, at p. 1069.) Indeed, by insisting that the vendor pursue reimbursement claims in which it has no financial interest, the Department's approach may tend to discourage vendor participation in the Medicaid program, precisely the opposite result that the vendor payment principle is designed to achieve. Since the recipient is the only party with an interest in pursuing the reimbursement claim, insisting that the claim be pressed by the provider, whose interests are normally antagonistic to the claim, without also giving the recipient a means of recourse, is both irrational and counterproductive. Thus, in *Krieger v. Krauskopf, supra*, 503 N.Y.S.2d 418, the court rejected the New York State Commissioner of Social Services' argument that reimbursement for expenses incurred during the retroactivity period was available only from the provider and not directly from the department. Relying on the comparability principle, the court concluded that the recipients must be directly reimbursed. "To hold otherwise would lead to the creation of two classes of Medicaid recipients, one of which would receive fewer benefits solely because the members of the class paid their medical bills promptly, and the other which would receive greater benefits by way of reimbursement to the providers of medical services because the members of the class did not pay their medical bills promptly." (*Id.* at p. 420.) Thus, the failure of the Department to provide a method by which recipients may be promptly reimbursed for covered medical expenses for which they paid during the retroactivity period violates federal law.

Under state and federal law, recipients have the right to a fair hearing if they are dissatisfied with the actions of the county or state agency. (42 C.F.R. § 431.220(a)(2) (2001); Welf. & Inst. Code, § 10950; Cal. Code Regs., tit. 22, § 50951.) Each petitioner was in fact granted a hearing at which he was permitted to challenge the actions of DHS. Although the ALJ in each instance concluded that there was no jurisdiction to grant the requested relief, each considered and decided the petitioner's claim before it, thereby exercising jurisdiction and providing petitioners with the requested hearing. (*Coan v. State of California* (1974) 11 Cal.3d 286, 303 [113 Cal.Rptr. 187, 520 P.2d 1003] ["Subject matter jurisdiction has been defined as the 'power to hear or determine the case' "]; see also *Abelleira v. District*

*Court of Appeal, Third District* (1941) 109 P.2d 942, 948 [132 A.L.R. 715].)[10]

The ALJ's were correct that the Department has failed to establish a process to ensure that recipients such as Schwarzmer and Conlan receive the reimbursement to which they are entitled. It was therefore their duty to direct the Department to comply with the mandates of the governing law in the cases before them, just as it may be their duty on occasion to declare that regulations adopted by the Department are invalid. The ALJ must "proceed[] in the manner required by law." (Code Civ. Proc., § 1094.5.) "[O]n principle, an *invalid* regulation *should* be vulnerable to attack at the administrative level. . . . 'Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute.' " (*Woods v. Superior Court* (1981) 28 Cal.3d 668, 680 [170 Cal.Rptr. 484, 620 P.2d 1032] (*Woods*), quoting Gov. Code, § 11342.2.) In *Woods*, the petitioners argued that the regulations of the county department of social welfare violated state and federal law. The petitioners were granted a hearing, at which their request to invalidate the regulations was denied. They sought review of the agency decision under Code of Civil Procedure section 1094.5. The respondent argued that the petition properly should have been brought under section 1085, but the Supreme Court disagreed, viewing the case as one where the court was reviewing the agency decision refusing to invalidate the regulation. "The practical effect of prohibiting an administrator from nullifying an invalid regulation of his own making would be to require the invocation of a judicial remedy in all such cases. . . . Permitting administrators an opportunity to construe challenged regulations in a manner to avoid their invalidation is preferable to requiring a court challenge. Moreover, in those cases in which the validity of such a regulation must be judicially resolved, the task of a reviewing court is simplified by a narrowing and clarification of the issues in an administrative hearing." (*Woods, supra,* at pp. 680-681.)

The ALJ's also were correct in recognizing that it is not their province to establish or dictate the rules and regulations of the Department. But it is their responsibility to ensure that the Department by inaction does not fail to provide recipients the benefits to which they are legally entitled. Indeed, fair hearings are available not only when a recipient is dissatisfied with agency action, but when an "application is not acted upon with reasonable promptness." (Welf. & Inst. Code, § 10950.) Presented with fair hearing requests

---

[10]Because we conclude that the ALJ's exercised their jurisdiction, we reject petitioners' argument that they were denied a fair hearing.

from the petitioners, the ALJ's should have determined the amount of covered services purchased by each petitioner during the retroactivity period for which the Department had not paid, if any. Assuming that some amount was due from the Department, the ALJ's might properly have deferred to the Department's choice of the method by which payment would be transmitted to the recipient—either directly or through the provider. But neither the ALJ's nor the court should have countenanced the Department's failure to do anything that will result in the petitioners receiving the benefits to which they are entitled and for which the Department has not yet paid. Thus, writs of mandate under Code of Civil Procedure section 1094.5 should be issued with respect to the proceedings involving Schwarzmer and Conlan. The ALJ's should be directed to hear the evidence and, if amounts are found to be due, to direct the Department promptly to make reimbursement either directly or through the providers.

Having resolved the petitions of Schwarzmer and Conlan on other grounds, we need not consider their arguments that respondents have denied them due process under the state and federal Constitutions. ▓▓ ▬ ▬ "[C]onstitutional issues ordinarily will be resolved on appeal only if 'absolutely necessary' and not if the case can be decided on any other ground." (*Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 753 [120 Cal.Rptr.2d 550], citing *Palermo v. Stockton Theatres* (1948) 32 Cal.2d 53, 65 [195 P.2d 1].)[11]

*Stevens's Petition*

▓ Unlike petitioners Schwarzmer and Conlan, Stevens did not incur costs during the retroactivity period. Rather, Stevens erroneously paid his providers amounts he did not owe when his eligibility had already been established. The parties agree that Stevens should not have been charged a copayment after his eligibility was determined. Welfare and Institutions Code section 14019.4 provides that Medi-Cal providers may not bill recipients directly for services after being presented with proof of eligibility.[12] Federal law permits providers to collect a nominal copayment, but eligible participants in Medi-Cal may not be charged more than a one dollar copayment for prescriptions. (42 U.S.C. § 1396o(b)(3); Cal. Dept. of Health Services, Medi-Cal: What It Means to You (undated) p. 15.) However, because of the ALJ's conclusion that he was powerless to order direct

---

[11]Petitioners also argue that the failure to provide direct reimbursement violates the "nominal costs" provisions of federal law. (42 U.S.C. § 1396o(b)(3); 42 C.F.R. § 447.54(a)(3) (2001).) These sections are designed to limit the amount a state Medicaid program can charge for cost-sharing, and by their terms are not applicable to retroactive payments.

[12]The record contains no evidence as to whether Stevens presented the pharmacy with proof of eligibility.

reimbursement even if due, no determination was made as to whether Medi-Cal, through HIPP, is obligated to make copayments for qualified providers.[13] The record shows that Medi-Cal pays the recipient's premium, and there is no dispute that they did so in this case. If as a Medi-Cal provider the pharmacy agreed to accept a lower level of compensation, it may not be entitled to receive from Medi-Cal the amount of the copayment in excess of one dollar. If this is the case, Stevens would not be entitled to reimbursement from the Department, since the Department was not obligated to make those payments. While the Department might see fit to institute disciplinary proceedings against the pharmacy if the pharmacy is not complying with applicable regulations, Stevens's recourse would be to pursue his claim for recoupment against the provider. If, on the other hand, the Department does owe all or a portion of the copayment amounts paid by Stevens, the situation would be much like the situation with respect to Schwarzmer and Conlan. Stevens would have no effective recourse to recover a benefit that is owed by the Department. For the reasons discussed above, the Department's failure to provide a means by which Stevens can recover reimbursement to which he is entitled and for which the Department is responsible would violate the comparability requirement. If that is the case, Stevens would be entitled to recover the amounts that the Department is obligated to pay, and it would be the ALJ's responsibility to ensure that the Department honors its obligation.[14]

*Relief Under Code of Civil Procedure Section 1085*

 Although the trial court should have granted relief under Code of Civil Procedure section 1094.5, petitioners are also entitled to prevail on their challenge under section 1085. In order to comply with the federal comparability requirement, DHS must take appropriate measures to ensure that prompt reimbursement is made to recipients who incur out-of-pocket

---

[13]During oral argument, both sides acknowledged that there has been no determination as to whether the Department or the provider is ultimately responsible for absorbing the cost of the copayments.

[14]We do not address Stevens's contention that he was given inadequate notice of the copayment provisions since this argument is a factual one that was not raised in the court below and therefore has been waived. (*Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 879 [242 Cal.Rptr. 184].) Although the petition and the recitation of facts in petitioner's points and authorities submitted to the trial court did allude to the asserted fact that the Department had failed to inform Stevens that he was not obligated for the copayments, no portion of the argument in the points and authorities addressed this alleged failure or predicated a request for any relief upon this asserted failure. The ALJ had concluded that "information concerning co-payments is covered in the Medi-Cal information pamphlet" and Stevens did not direct the trial court to any evidence to contradict this finding. No consideration was given to this contention by the trial court.

expenses for covered services during the retroactivity period. (See, e.g., *Morris v. Harper* (2001) 94 Cal.App.4th 52, 58 [114 Cal.Rptr.2d 62] ["Mandamus has long been recognized as the appropriate means by which to challenge a government official's refusal to implement a duly enacted legislative measure"]; *Rogers v. Detrich* (1976) 58 Cal.App.3d 90 [128 Cal.Rptr. 261].) The failure to have adopted any such measures constitutes a failure to comply with the requirements of law. The manner in which the Department chooses to meet its obligations is within the discretion of the Department. (*Barnes v. Wong, supra,* 33 Cal.App.4th 390.) Thus, we do not decide what form such procedures must take. Whether to utilize direct reimbursement to recipients or to establish a procedure ensuring that providers are promptly reimbursed and in turn promptly reimburse recipients, in which the recipient is given an avenue of redress if the process fails, is left to the sound discretion of the Department. Admittedly, there are potential advantages in the latter approach, since the submission of claims through providers who are familiar with program procedures and coding may be more efficient and should yield the recipient the full reimbursement to which he or she is entitled, rather than only the portion owed by Medi-Cal. While the method of accommodating such considerations is within the discretion of the Department, we decide only that ignoring the recipients' rights and doing nothing is not an option.

DISPOSITION

The decision of the superior court is reversed and remanded as to all petitioners. The court shall issue a writ of mandate pursuant to Code of Civil Procedure section 1085 directing the Department to adopt and implement procedures consistent with this opinion to ensure that Medi-Cal recipients entitled to reimbursement for covered services obtained during the retroactivity period are promptly reimbursed. The court shall also issue writs of mandate pursuant to Code of Civil Procedure section 1094.5 directing the ALJ's to determine what amounts, if any, each of the petitioners is entitled to recover that the Department is obligated to pay and either to order direct reimbursement to the respective petitioner or to allow the Department a reasonable period of time in which to implement new procedures designed to effect such reimbursement.

Petitioners shall recover their costs on appeal.

Corrigan, Acting P. J., and Parrilli, J., concurred.

A petition for a rehearing was denied October 29, 2002, and the opinion was modified to read as printed above.