[No. C051385. Third Dist. Apr. 5, 2007.]

IMAGISTICS INTERNATIONAL, INC., Plaintiff and Appellant, v. DEPARTMENT OF GENERAL SERVICES,[1] Defendant and Respondent; SHARP ELECTRONICS CORP., Real Party in Interest and Respondent.

---

[1] The petition identified the Department of General Services (DGS) as the defendant, although the caption listed it as a relator of the State of California. For purposes of accurate identification of the parties, we have amended the caption.

582

COUNSEL

Law Offices of Paul F. Dauer and Paul F. Dauer for Plaintiff and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Christopher E. Krueger, Assistant Attorney General, Catherine Van Aken and Geoffrey L. Graybill, Deputy Attorneys General, for Defendant and Respondent.

Howard Rice Nemerovski Canady Falk & Rabkin, Denis T. Rice and Michael L. Gallo for Real Party in Interest and Respondent.

OPINION

DAVIS, Acting P. J.—Following the rejection of its protest to the award of a public contract to real party in interest Sharp Electronics Corp. (Sharp), plaintiff Imagistics International, Inc. (Imagistics), filed the present petition for a peremptory writ of mandate directing defendant Department of General Services (DGS) to accept its protest, or for a declaration that the award of the contract to Sharp was void. In bifurcated proceedings, the trial court first found that the standard of strict compliance was appropriate for the procedures for filing a protest, which plaintiff Imagistics had not satisfied. In its subsequent order, it did not find any basis for excusing plaintiff Imagistics from exhausting this administrative remedy.

Plaintiff Imagistics promptly appealed. It renews its arguments here, as well as invoking new ones for the first time.[2] We shall affirm.

BACKGROUND

In March 2005, defendant DGS solicited proposals for the purchase of photocopiers and related support services. The value of the contract approximated $37.5 million.

The bidding process had two phases. The first solicited responses to technical and administrative specifications of the proposal. Bidders that

---

[2] Pursuing reversal on a basis that might have been timely resolved in the trial court is a disapproved tactic that wastes the resources of the litigants and this court, and we generally do not permit it. (E.g., *Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 371, fn. 8 [15 Cal.Rptr.3d 430].)

satisfied these criteria could then participate in a so-called reverse auction that provided the opportunity to view the lowest existing bid and place a lower one.

The solicitation included a notification that the DGS would be conducting it under the auspices of an alternate procedure in which unsuccessful bidders must submit any protests to binding arbitration. (Pub. Contract Code, § 12125 et seq.)[3] In the regulations governing protest arbitration, defendant DGS has designated a "Coordinator" to supervise any protests to a solicitation under the program. (Cal. Code Regs., tit. 1, § 1402, subd. (e).)

While plaintiff Imagistics submitted the lowest bid in the reverse auction, real party in interest Sharp's bid had a higher score in the first phase. As a result, its overall score was higher, and defendant DGS issued its notice of intent to award the contract to Sharp. Plaintiff Imagistics sent its notice of intent to protest the award on June 23, 2005. In its response to plaintiff, defendant DGS reiterated the need to file a "Detailed Written Statement of Protest" (SOP) no later than 5:00 p.m. on July 5, 2005, along with a filing fee and a deposit for estimated arbitration costs.

■ Under the pertinent regulations, "A protest is filed by the submission of: the [SOP] *and any exhibits specified in section 1412*; a check . . . for the OAH filing fee of $50; and the arbitration deposit . . . to the Coordinator by [5:00 p.m. (see Cal. Code Regs., tit. 1, § 1402, subd. (c))] on the 7th working day after the time . . . for written Notice of Intent to Protest . . . . A [protesting party] who fails to comply with this subsection waives [its] right to protest." (Cal. Code Regs., tit. 1, § 1408, subd. (a).) ". . . If the [SOP] is sent to the [DGS] by [fax], [the protesting party] must . . . [¶] . . . [¶] (2) Remit the required deposit and filing fee to [the] Coordinator by any reasonable means. If sending via carrier, the postmark date . . . shall be used to determine timeliness." (*Id.*, § 1408, subd. (b).) In the provisions governing the format and contents of the SOP, the material portions of the solicitation must be included as exhibits, the length is limited to 50 typed pages "excluding exhibits," and "[a]ny exhibits submitted shall be paginated." (*Id.*, § 1412, subds. (b)(1), (2), (c), (d).) Failure to comply with these provisions forfeits the right to protest. (*Id.*, § 1412, subd. (g).)

Plaintiff's attorney sent an associate and an assistant to the offices of defendant DGS at 4:50 p.m. on July 5 to hand deliver the SOP with its

---

[3] Hereafter, undesignated section references are to the Public Contract Code.

accompanying exhibits. They discovered that a check for the fee and deposit was not in the envelope. They told DGS employees that someone would bring them a check; however, the DGS employees emphasized that 5:00 p.m. was the absolute deadline for submitting a check in person. While this was taking place, the fax machine in the DGS office began to receive plaintiff's SOP. However, the transmitted SOP did not include any of its accompanying exhibits. A second assistant from plaintiff's attorney's office arrived with a check just after the DGS office closed its doors at 5:00 p.m. Plaintiff's three representatives saw an assistant deputy director of defendant DGS's legal department in the hallway and attempted to persuade him to accept the check, but he refused the proffer.[4] About 6:30 p.m., DGS sent a fax to plaintiff and its attorney notifying them that their protest was incomplete for want of a check for the fee and deposit, and therefore was "terminated." DGS simultaneously faxed notice to all interested parties that the protest was now closed.

Shortly before 7:00 p.m. that evening, defendant DGS received a fax from plaintiff's attorney that was a copy of a cover letter for the check for the fee and deposit. On the next day (July 6), defendant DGS received the original and the check in an envelope postmarked July 5. Defendant DGS returned the check the same day, stating that the late submission of payment did not meet filing requirements. Plaintiff's attorney also sent a letter on July 6 to the DGS attorney in response to the July 5 faxed notice that its protest was considered terminated. This letter was replete with criticisms: chiding the DGS attorney for failing to accept the check because this was a reasonable means of delivering payment to the Coordinator when filing by fax, pointing out that DGS employees were still at work after 5:00 p.m. (an assertion overlooking the deadline as defined in the regulations), and complaining of the "brusk [sic] and inappropriate handling of this matter." Defendant DGS awarded the contract to real party in interest Sharp on July 7.

On July 11, plaintiff filed the present petition with a supporting memorandum of points and authorities. At the initial hearing in this matter two days later, the trial court issued an order bifurcating the issues, with the matter of the timeliness of plaintiff's protest to be considered first. It directed the responding parties to file briefs by 10:30 a.m. on July 22 for the July 29 hearing.

Defendant DGS and real party in interest Sharp filed answers responding to allegations involving these issues on July 22, along with their opposition

---

[4] At some point after she returned to the office, the second assistant e-mailed a copy of the SOP with exhibits to this DGS attorney.

briefs, but apparently only real party in interest Sharp filed these before 10:30 a.m. Defendant DGS included declarations from several of its employees as exhibits to its answer. In its reply, plaintiff Imagistics asserted that the failure of defendant DGS to file its answer by the court's purported deadline meant that all the allegations of the petition must be deemed uncontroverted as to defendant DGS, and thus the trial court must disregard the declarations filed with the untimely answer.

As noted at the outset, the superior court concluded that strict compliance with requirements for filing a protest was necessary in the context of awards of major contracts subject to the alternative protest procedure. In doing so, it cited policy statements in attachments to defendant DGS's declarations, therefore implicitly overruling plaintiff Imagistics's objection to the answer.[5] Applying the principle of strict compliance, it ruled that plaintiff could not appear in person with the SOP and exhibits but without a check (as required under Cal. Code Regs., tit. 1, §1408, subd. (a)), or fax the SOP and mail a check postmarked on the deadline but fail to fax the exhibits (as required under Cal. Code Regs., tit. 1, §1408, subd. (b)). The court rejected the argument that plaintiff could aggregate partial compliance with each of two provisions into a species of actual compliance. It also rejected an argument that the failure explicitly to refer to the need to fax exhibits in the latter regulation meant that it was unnecessary to fax them. It filed a transcript of its oral remarks as part of its order.

Real party in interest Sharp filed its supplementary answer to plaintiff Imagistics's remaining allegations on August 10, 2005. Plaintiff filed a memorandum of points and authorities on the remaining issues, raising the issue yet again of the failure of defendant DGS to answer the remaining allegations. Defendant DGS eventually filed its answer and opposition brief in mid-September, along with additional declarations. It asserted that its answer was not due until the hearing noticed for October 14.

At the hearing, the court framed the threshold issue as whether a bidder could simply evade the need to exhaust the administrative remedy for protesting bids through the device of calling itself a taxpayer and bringing an action in that capacity to determine whether the award of a contract was a waste of public funds. In rejecting this argument, the court stated that it would have needed to resolve this issue of law regardless of whether defendant DGS had filed a timely answer, and therefore did not expressly resolve whether or not the answer was timely. The court rejected other

---

[5] A remark may refer to the objection: "The Court recognizes substantial compliance[,] however, in the context of the filing of the opposition and properly consider[s] that." Moreover, later in the hearing the court stated, "[t]here were other arguments made by the petitioner [that] were equally strained, which I've rejected obviously in denying the writ."

theories to excuse plaintiff's failure to exhaust the administrative remedy as being an "afterthought mechanism" that had not been part of the gist of the petition as filed. The court's ruling again included a transcript of its remarks at the conclusion of the hearing.

## DISCUSSION

### I

Citing the unquestioned principle that a failure to answer a writ petition admits the truth of its allegations (*Reis v. Biggs Unified School Dist.* (2005) 126 Cal.App.4th 809, 814 [24 Cal.Rptr.3d 393]), plaintiff Imagistics renews its arguments that the trial court should have ignored the answers of defendant DGS because they were untimely. It asserts ipse dixit that "the Superior Court [did not have any] authority to accept any evidence into the record controverting the factual allegations in the writ petition."

■ Plaintiff Imagistics is incorrect. Even if the time to answer had expired, a trial court has discretion to decide whether to strike a late-filed answer. (*Cuddahy v. Gragg* (1920) 46 Cal.App. 578, 580–581 [189 P. 721].) Plaintiff Imagistics has not demonstrated any abuse of this discretion in the present matter.

### II

Plaintiff Imagistics contends that it strictly complied with the regulations governing a bid protest under a "reasonable reading" of them. In the alternative, it argues that it substantially complied with the regulations without providing any analysis of the superior court's reasoning in favor of strict compliance. (*Independent Roofing Contractors v. California Apprenticeship Council* (2003) 114 Cal.App.4th 1330, 1336 [9 Cal.Rptr.3d 477] [duty of appellant to demonstrate error in trial court's reasoning].)

### A

■ Taking up the latter issue first, the regulation does not grant the protest Coordinator any discretion to accept a late filing; rather, it specifically calls for forfeiture of a protest for noncompliance. Under these circumstances, the doctrine of substantial compliance is inapplicable, as a court does not have the power to issue a writ of mandate to accept a late filing. (*Barnes v. Wong* (1995) 33 Cal.App.4th 390, 395–397 [39 Cal.Rptr.2d 417] [ordinance not allowing discretionary acceptance of late filing (in absence of good faith mistake regarding deadline) represents "sound policy" avoiding "uneven and inconsistent administration of preelection procedures and is the most reliable

way to ensure that everyone is treated fairly and equally"; no discretion to abuse or any ministerial duty to petitioner to accept late filing, so mandate will not lie]; *Sonoma County Nuclear Free Zone '86 v. Superior Court* (1987) 189 Cal.App.3d 167, 176–178 [234 Cal.Rptr. 357] [no abuse of discretion in setting deadline; no discretion to ignore deadline, so mandate will not lie].)

## *B*

■ Plaintiff Imagistics does not appear to argue that it satisfied the requirements for personal delivery of its SOP, other than through a belated invocation of Government Code section 11002 (after it had filed its opening brief). This statute provides, in pertinent part, "If a remittance to cover a payment required by law to be made to the state or to a state agency on or before a specified date is sent through the . . . mail . . . , it shall be deemed received on the date shown by the cancellation mark stamped upon the envelope containing the remittance . . . ." Even if we were to exercise our discretion to allow plaintiff Imagistics to raise a legal argument for the first time on appeal to obtain a reversal (see 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 398, p. 450), the statute does not add anything to the analysis. It neither expressly nor through any reasonable implication creates some bifurcated procedure for filing under which an agency is obligated to accept documents in person for filing on the final day that are unaccompanied by a required fee, so long as the fee is separately mailed that day. It is not as if plaintiff Imagistics were attempting to assert the timeliness of a protest mailed with all necessary documents and fees on July 5, 2005.

■ This leaves what the trial court found to be a tenable but ultimately unacceptable argument based on the imprecise wording of the protest provisions. As noted above, the regulation that governs the content and format of an SOP distinguishes between the SOP itself and any exhibits. (Cal. Code Regs., tit. 1, § 1412.) The subdivision generally prescribing the time to file explicitly refers both to the SOP and its exhibits (Cal. Code Regs., tit. 1, § 1408, subd. (a)), but the subdivision governing fax filings mentions *only* the SOP (*id.*, § 1408, subd. (b)). From this plaintiff Imagistics derives an intent to permit fax filings without exhibits (given the legibility issues that often arise with faxed documents) at the party's risk of the matter being decided in the absence of the supporting evidence. Given that the entire purpose of the alternate protest procedure is to filter out frivolous protests expeditiously, and that the Coordinator must make a preliminary determination that a protest is frivolous by five working days after receipt (Cal. Code Regs., tit. 1, §1414, subd. (b)), we cannot discern any rational basis for allowing those who choose to fax their protest to file exhibits at some unspecified future time. This would either delay the determination of the Coordinator or require a determination without all the pertinent evidence. Finally, an SOP without

exhibits is contrary to specific provisions for the contents of an SOP, which require at least the material portions of the solicitation as exhibits. (Cal. Code Regs., tit. 1, § 1412, subd. (b)(1), (2).) We therefore conclude that the lack of an explicit reference to exhibits is merely an unintentional ellipsis.

Finally, plaintiff contends in cursory manner that defendant DGS was not prejudiced from the failure to fax the exhibits, because "DGS was in possession of all the exhibits prior to the deadline as a result of hand delivery." Plaintiff Imagistics fails to supply any authority for considering an absence of prejudice in the context of strict compliance. Moreover, this assertion disregards the massive number of contracts and proposals that defendant DGS administers,[6] and apparently is premised on the belief that it would be a simple matter to coordinate piecemeal protests presented in person and by fax. We reject this theory.

## III

Plaintiff Imagistics suggests two established bases excuse it as an unsuccessful bidder from the need to exhaust the administrative protest remedy. It relies on the doctrine of futility, and on purported ways in which the administrative procedures violate due process.

### A

The entirety of plaintiff's argument on futility claims that "historical statistics demonstrate the [alternate protest procedure] is effectively a sham and resort to it is ineluctably an exercise in futility." This exception, however, "is a very narrow one." (*County of Contra Costa v. State of California* (1986) 177 Cal.App.3d 62, 77 [222 Cal.Rptr. 750].) Unless a litigant can demonstrate that the administrative agency has indicated its predetermined decision *in the litigant's particular case*, it does not apply even if the outcome in other similar cases is adverse to the litigant's position. (*Id.* at pp. 77–78; *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 301 [109 P.2d 942]; *Economic Empowerment Foundation v. Quackenbush* (1997) 57 Cal.App.4th 677, 691 [67 Cal.Rptr.2d 323] [which summarizes various cases where a litigant produced the necessary facts].) As a result, plaintiff's resort solely to the historical statistics contained either in his declaration or in the decisions of which he requests we take judicial notice is unavailing.[7]

---

[6] In an exhibit to one of defendant DGS's declarations, its director responded to a legislative inquiry on behalf of a bidder that was two minutes late; he noted the need to apply strictly objective standards "across a system that conducts thousands of procurements annually."

[7] For this reason, we deny plaintiff's September 2006 request for judicial notice. We also deny respondent's August 2006 request to take judicial notice of legislative materials, as they are unnecessary for our resolution of the appeal.

## B

■ If an administrative remedy fails to satisfy the standards of due process, the exhaustion requirement is excused. (*Bockover v. Perko* (1994) 28 Cal.App.4th 479, 486 [34 Cal.Rptr.2d 423].)

Plaintiff first contends that it violates due process for the regulations to specify the same limited judicial review of protest arbitration that applies to contractual arbitration awards. (Cal. Code Regs., tit. 1, § 1438.) It argues that its situation is akin to *Bayscene Resident Negotiators v. Bayscene Mobilehome Park* (1993) 15 Cal.App.4th 119 [18 Cal.Rptr.2d 626]. The case is inapposite, involving a party· *compelled* to participate in binding arbitration under threat of criminal prosecution. (*Id.* at pp. 123, 129.) It is only under such *compulsory* circumstances that the resulting arbitration award might violate due process if judicial review were confined to the narrow grounds for contractual arbitration. (*Id.* at pp. 132–134.) The case expressly distinguishes parties who *voluntarily* agree to subject themselves to arbitration as · a condition· of bidding on a state contract. (*Id.* at p. 133.)

Plaintiff next asserts that the administrative remedy .violates due process because the protest Coordinator[8] and the OAH (Office of Administrative Hearings) are "aligned" with defendant DGS (the former being an employee and the latter being a subordinate, agency). However, plaintiff Imagistics does not provide any apposite authority in support of this astonishing proposition. An employing agency, for example, may make the initial decision to dismiss a state employee (after giving notice and an opportunity to respond before the effective date) without referring the matter to an outside party for decision. (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d ·194, 215 [124 Cal.Rptr. 14, 539 P.2d 774]; *Flippin v. Los Angeles City Bd. of Civil Service Commissioners* (2007) 148 Cal.App.4th 272, 281 [55 Cal.Rptr.3d 458].) A state agency may also employ a hearing officer that it unilaterally selects, as long as it offers the hearing officer protection from arbitrary or retaliatory dismissals; a perception of bias in an adjudicator is *reasonably* present (the subjective concern of a

---

[8] In a tangential argument, plaintiff Imagistics suggests it violates due process for the regulations to allow the Coordinator to make a preliminary determination that a protest is frivolous, which triggers the need for a bond of at least 10 percent of the contract (forfeited if the protest arbitrator finds the protest is indeed frivolous). (Cal. Code Regs., tit. 1, § 1418.) Plaintiff does not suggest how this circumstance differs from the requirement that an appellant post a bond to stay the effect of a money judgment (*Grant v. Superior Court* (1990) 225 Cal.App.3d 929, 939 [275 Cal.Rptr. 564]) or that this requirement is any less reasonable than the undertaking required when seeking injunctive relief (*Dickey v. Rosso* (1972) 23 Cal.App.3d 493, 498 [100 Cal.Rptr. 358]). Given the lack of any cogent argument on this issue, we do not need to give it any further attention. (*Craddock v. Kmart. Corp.* (2001) 89 Cal.App.4th 1300, 1307 [107 Cal.Rptr.2d 881] (*Craddock*).)

particular litigant not being relevant) only if the prospects of future employment with the opponent can be seen as resting on decisions favorable to the opponent. (*Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, 1030–1031, 1034 [119 Cal.Rptr.2d 341, 45 P.3d 280]; *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 99 Cal.App.4th 880, 885–886 [121 Cal.Rptr.2d 729].)[9]

Citing *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167 [116 Cal.Rptr.2d 671], plaintiff Imagistics contends it is a violation of due process to have a small body of OAH hearing officers hear its protest, because defendant DGS is a "repeat player." Once again, the case is not apposite to plaintiff's situation. The employer in that case exerted economic pressure on the plaintiff to sign an arbitration agreement through threats of dismissal and blackballing in the industry. (*Id.* at pp. 172–173.) In light of what the court found to be *highly oppressive* procedural unconscionability, it ruled that only slight substantive unconscionability would be necessary to render the agreement unenforceable. (*Id.* at pp. 174–175.) This was present in the essentially unilateral obligation for the plaintiff to arbitrate disputes (*id.* at p. 176), the employer's unilateral ability to appoint the arbitrator (*id.* at p. 179), *and* the potential of favorable treatment of the employer as a repeat player before a small body of arbitrators (*id.* at pp. 178–179). However, the court noted that the advantage of being a repeat player would not of itself be sufficient to render an arbitration agreement unconscionable. (*Id.* at p. 179.) Assuming that the *unconscionability* of the procedures in an administrative remedy would allow a plaintiff to bypass it (*Brutoco Engineering & Construction, Inc. v. Superior Court* (2003) 107 Cal.App.4th 1326, 1330–1331 [132 Cal.Rptr.2d 866] [provision limiting list of arbitrators does not " 'shock the conscience' "]), we do not find the status of defendant DGS as a repeat player before a small cadre of OAH hearing officers on the relatively technical and objective issues presented in bid protests to shock our consciences.

This leaves plaintiff Imagistics's claim that the administrative remedy violates the federal supremacy clause (U.S. Const., art. IV) because it transgresses provisions of an international trade treaty known as the World

---

[9] In another tangential argument, plaintiff Imagistics asserts (based solely on the declaration of its attorney in support of its final reply brief) that the OAH hearing officers refuse to abide by the ethical standards for neutral *contractual* arbitrators that appear in the California Rules of Court. Even if we assume counsel's declaration proves this fact, it is irrelevant. Standard 1(a) of the Ethics Standards for Neutral Arbitrators in Contractual Arbitration expressly recites, "These standards are adopted under the authority of Code of Civil Procedure section 1281.85 . . . ." These standards therefore apply to *contractual* arbitrators. Protest arbitration, by contrast, is within the plenary authority of defendant DGS to define as it sees fit. (Pub. Contract Code, § 12126, subd. (c)(4) ["Arbitration, as defined and established by the [DGS], shall be the resolution tool"].) The regulations incorporate only the grounds for actual or perceived bias appearing in Code of Civil Procedure section 170.1. (Cal. Code Regs., tit. 1, § 1422, subd. (b).) Therefore, the ethical standards do not apply to *protest* arbitrators.

Trade Organization Agreement of Government Procurement (see ·19 U.S.C. § 3511(d)(17)). Plaintiff Imagistics argues (once again for the first time on appeal) that this .agreement requires California to provide an independent review body to hear its protest. Once again, assuming that we should exercise our discretion to allow plaintiff Imagistics to raise a basis for reversal for the first time on.appeal, it fails for the lack of adequate argument and authority to show that the OAH fails· to provide sufficiently independent review for purposes of this agreement. (*Craddock*, *supra*, 89 Cal.App.4th at p. 1307.) We are not about to hunt through state, federal, or international law on this issue on behalf of plaintiff.

## *IV*

Finally, plaintiff Imagistics appears to contend that it has a cumulative remedy in its capacity as a taxpayer to challenge an award of a contract as invalid, pursuant to Code of Civil Procedure section 526a.[10] (E.g., *Miller v. McKinnon* (1942) 20 Cal.2d 83, 89–90, 96 [124 P.2d 34] [action to recover funds expended on contract not awarded pursuant to competitive bidding].)[11] In the sixth count of its petition, plaintiff alleged that "a corporation that pays taxes within the State of California may bring an action to prevent illegal expenditure of public funds," that the award of the contract to real party in interest Sharp "is improper" because it deviated materially from the proposal, and that any payment pursuant to this contract would be a waste of public funds.

Taxpayer actions and so-called citizen actions involve closely related concepts of standing. "The chief difference is [that] a taxpayer suit seeks preventative relief . . . , while a citizen suit seeks affirmative relief . . . ." (*Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 29 [112 Cal.Rptr.2d 5].) As we noted in *Waste Management of Alameda County, Inc. v.. County of Alameda* (2000) 79 Cal.App.4th 1223 [94 Cal.Rptr.2d 740] (*Waste Management*), a corporation's standing to bring a citizen action

---

[10] This argument is not presented *clearly* in any heading in the opening brief as required. (*Smith v. City of Napa* (2004) 120 Cal.App.4th 194, 202 [14 Cal.Rptr.3d 908]; *People v. Baniqued* (2000) 85 Cal.App.4th 13, 29 [101 Cal.Rptr.2d 835].) Indeed, respondents interpreted the opening brief as having abandoned this "lurking" argument. However, as they responded to it nonetheless and plaintiff has provided more focused argument in its reply brief, we address the issue.

[11] Plaintiff's sole authority is our opinion in *Pozar v. Department of Transportation* (1983) 145 Cal.App.3d 269 [193 Cal.Rptr. 202], wherein we held that a *bidder* may obtain a writ of mandate to compel a state agency to follow its own rules in computing the bid. (Cf. *Rubino v. Lolli* (1970) 10 Cal.App.3d 1059, 1062–1063 [89 Cal.Rptr. 320] [losing bidder may obtain writ to set aside award for failure of agency to follow specifications].) However, nothing in the case involves standing as a *taxpayer*, and a *bidder* would not be able to seek such a writ presently without exhausting the administrative remedy that plaintiff seeks to avoid here.

depends on a number of factors. These include a demonstration that it has a continuing commitment to the public interest it purports to assert or that it consists in representative fashion of individuals who would otherwise have a beneficial interest in the action who would find it difficult or impossible otherwise to enforce their own rights,[12] and that its prosecution of the action would not conflict with competing legislative policies. (*Waste Management, supra*, 79 Cal.App.4th at p. 1238.) Where the first three factors are absent, and the corporation is pursuing an action against a competitor out of economic interest, the corporation does not have standing. (*Id.* at pp. 1238–1239.)

Neither party has directed us to any authority discussing whether a bidder on a public contract can simply switch hats to a "concerned taxpayer" to challenge the award of the contract to another party, nor have we been able to find any. If we consider the factors in the authority just cited, it ill behooves us to endorse plaintiff's assertion of this right. Plaintiff has not produced any evidence of its advocacy against waste in the award of public contracts or that it purports to represent any such individuals, we do not discern any obstacles to an ordinary disinterested taxpayer bringing an action to prevent the improper award of a public contract, and allowing plaintiff to proceed on this basis would clearly undermine the legislative policy in setting up the administrative remedy. We therefore conclude that plaintiff Imagistics does not have standing to void the award to real party in interest Sharp.

To the extent its brief seems to suggest that it seeks as a taxpayer to correct the constitutional defects it has asserted are present in the protest arbitration procedure, its petition does not include any allegations specifically establishing the manner in which these result in an illegal expenditure or an injury to the public fisc. The petition therefore fails to establish the standing of plaintiff Imagistics as a taxpayer in this respect as well. (*Waste Management, supra*, 79 Cal.App.4th at p. 1240.)

### DISPOSITION

The judgment is affirmed. The requests for judicial notice are denied.

Nicholson, J., concurred.

---

[12] *Cornelius v. Los Angeles County etc. Authority* (1996) 49 Cal.App.4th 1761, 1779 [57 Cal.Rptr.2d 618], cited a similar consideration in declining to extend standing for a taxpayer action to the plaintiff before it.

**ROBIE, J.,** Concurring.—I concur in Justice Davis's opinion. I write separately to comment that this case shows why every lawyer in California should have a sign posted in his or her office which says *"Never do anything on the last day or at the last moment."* Plaintiff's machinations in this lawsuit and the convoluted legal and constitutional arguments advanced were only necessary because plaintiff's attorney waited to file a bid protest until five minutes before the deadline and failed to include a check for the required fees in the filing, an easy mistake to make but one easily correctable if the filing was not made at the last moment.

On May 4, 2007, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 11, 2007, S152676.