Filed 1/2/14  P. v. Dawson CA3

## NOT **TO** **BE** **PUBLISHED**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# THIRD APPELLATE DISTRICT

## (Glenn)

----

| | |
|---|---|
| THE PEOPLE, | C072214 |
| Plaintiff and Respondent, | (Super. Ct. No. 11NCR08852) |
| v. | |
| JOHN HOWELL DAWSON, | |
| Defendant and Appellant. | |

A jury found defendant John Howell Dawson guilty of attempted child molestation and misdemeanor indecent exposure.  The trial court suspended imposition of sentence and placed defendant on three years of probation, subject to various conditions (including a 240-day jail term).

1

In his appeal, defendant asserts the prosecutor committed several instances of irremediable misconduct during closing argument, and trial counsel was ineffective in failing to make any objection to them. He also identifies several errors in the probation order's imposition of fees and fines, which the People concede. We shall affirm the order granting probation as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

Given the nature of the contentions on appeal, we do not need to provide an extensive summary of the evidence at trial. In February 2011, the victim was staying overnight at the apartment of her stepsister and the latter's boyfriend. Defendant, who was a friend of the stepsister and boyfriend, was a stranger to the victim. On being introduced to the victim, defendant learned that she was 13 years old; he told her that if she were 18 he would have liked to date her, because she was pretty. The victim took this as a compliment.

The stepsister, her boyfriend, and defendant had been sitting in the living room smoking marijuana. The victim went to the store with her stepaunt, who lived in the same complex. When they came back, it was after dark. There was a movie playing on the television. Defendant was sitting on the sofa; the stepsister was asleep in her bedroom; and the boyfriend was in the bedroom as well. The boyfriend came into the living room once or twice during the movie.

As defendant was sitting next to the victim, she noticed that his hand was moving inside his pants. The victim asked what he was doing, and defendant told her he had "a masturbation problem." He then asked if she wanted to see his penis. She said "no," and returned her attention to the movie. Defendant asked her several times whether she wanted to touch his penis, and she repeatedly told him that she did not. She did not call to her stepsister or the boyfriend, because she did not know what to do. Defendant pulled his erect penis out of his pants and stood in front of her holding it, telling her that she

2

should touch it because it was really big. When he heard the boyfriend coming back into the living room, defendant reclothed himself and sat back on the couch.

The victim took this occasion to go into the bedroom and tell the stepsister that she was going to the apartment upstairs, where her stepaunt's friend lived. She did not tell the stepsister what happened because she felt embarrassed and "weird." The stepaunt was also in her friend's apartment. The stepaunt asked the victim what was wrong, because the victim was white and shaking. When the victim told the two women what had happened with defendant, they said they would take care of it in the morning. The victim spent the night with her stepaunt's friend and did not return to the stepsister's apartment. When she woke in the morning, she called her other stepsister and asked for a ride to her house. The other stepsister thought the victim sounded agitated on the phone. During the drive, the victim told her what happened. She was fidgeting and close to tears. The other stepsister called the police to report the incident.

Defendant testified that he did not have much contact with the victim when both were at the apartment. He never told her that she was pretty, or that he would date her if she were older. When the two of them were alone on the couch together, he was using his laptop computer. At some point, he slid his computer to the side so that he could scratch at his itchy genitals from the outside of his pants. (He had told the police that he had stuck his hand inside his pants to scratch himself.) He saw that the victim had a shocked look on her face. He then apologized for scratching himself in front of her.

## DISCUSSION

### I. The Misconduct Claim Is Forfeited

Defendant contends the prosecutor committed four instances of misconduct in his closing argument. First, the prosecutor made reference to a statement the victim had made to the police (in which she mentioned that defendant was 27) that was not part of

the evidence at trial, and (in defendant's view) suggested there was independent verification of her testimony outside the record.  Second, the prosecutor characterized the decision to bring a case to trial with only uncorroborated victim testimony as being fairly unusual, which defendant asserts vouched for the victim's credibility.  Third, the prosecutor made an improper appeal to the feelings of the jury in urging that "we" would want to believe "our kids" and therefore "we" would want a jury to believe them.  (Admixed into this argument is a challenge to the prosecutor commending the victim for being willing to go through with the ordeal of the trial, and making reference to the extrajudicial fact of the emotional support that her family provided her.)  Fourth, defendant claims the prosecutor misstated the law in arguing that the jury had the job of deciding which of the two stories it had heard was worthy of belief.  In addition to the prejudice defendant claims from this misconduct *qua* misconduct, he also claims that to the extent the prosecutor was relying on extrajudicial information in closing argument, he became a witness who was not subjected to cross-examination and therefore also violated defendant's right to confrontation.  (See *People v. Bolton* (1979) 23 Cal.3d 208, 214, fn. 4.)

Recognizing that there is an absence of any contemporaneous objection to the various incidents of misconduct, defendant makes a perfunctory assertion that it would have been futile to object and request admonitions because the prejudice was incurable. In the alternative, he states in conclusory manner that trial counsel could not have had any reasonable basis for failing to object, and therefore provided ineffective assistance.

A prosecutor commits misconduct under state law through a resort to deceptive or reprehensible tactics designed to sway the verdict of the finder of fact; this rises to a violation of the federal Constitution only where the prosecution's actions permeate the proceedings with a "degree of unfairness" that renders them a deprivation of due process. (*People v. Panah* (2005) 35 Cal.4th 395, 462 (*Panah*).)  In order to preserve the issue for

4

appeal, a defendant must make a timely objection, state the grounds of the objection, and ask the trial court to admonish the jury on the subject. (*Ibid*.) This salutary remedial procedure gives a trial court the opportunity to purge any resulting taint and rein in any further occurrences; a reviewing court will deem the failure of a party to follow this procedure for registering objections as representing a willingness to participate in the atmosphere of prejudice. (*People v. Brown* (2003) 31 Cal.4th 518, 553.) Moreover, entertaining an issue after the fact is unfair to the trial court and the prosecution. (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264-265 & fn. 22; *Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 584, fn. 2.) We will relieve a defendant from this rule of appellate forfeiture only where the lodging of an objection and/or an admonition request would have been futile (including where the immediate overruling of an objection forecloses an admonition request), or where the misconduct is simply irremediable. (*Panah*, *supra*, 35 Cal.4th at p. 462.) A "ritual incantation that an exception applies is not enough"; the defendant must affirmatively demonstrate its application in light of the record. (*Ibid*.)

In the first place, even if defendant were correct on the merits about the various portions of the prosecutor's argument, none of these touched the proverbial live wire in the case (see *People v. Galloway* (1979) 100 Cal.App.3d 551, 560) with a resulting potential emotional impact on the jury. A focused admonition in each instance would easily have corrected any misstatements of the facts or law, or reminded the jury that their verdict must be based on the facts introduced into evidence without consideration of personal sympathies. Defendant thus fails to establish that any of the challenged argument comes within the narrow category of irremediable matter to which a jury has been exposed for which admonitions are not effective (see *People v. Ervine* (2009) 47 Cal.4th 745, 776) and thus fails to establish that this exception applies (*Panah*, *supra*, 35 Cal.4th at p. 462).

As for the claim of ineffective assistance, the failure to object to prosecutorial misconduct rarely provides the basis for a successful claim on direct appeal. (*People v. Lopez* (2008) 42 Cal.4th 960, 966.) A defendant must craft a persuasive argument of the manner in which defense counsel fell below professional norms at trial, and cannot simply lob conclusory reasoning in our direction. (*People v. Mitchell* (2008) 164 Cal.App.4th 442, 467.) Defendant has failed in this regard. Accordingly, we confine ourselves to observing that (for purposes of direct appeal) we believe a reasonable attorney could have taken the same view of the asserted misconduct as we do, and believed it did not seriously distort the prosecution's burden such that counsel needed to take any remedial action. (*People v. Pope* (1979) 23 Cal.3d 412, 425.)

Assuming defendant's argument regarding the purported violation of his right to confrontation is not forfeited as a "lurking" argument (one that does not have any logical connection with the heading (*Imagistics Internat., Inc. v. Department of General Services*, *supra*, 150 Cal.App.4th at p. 593, fn. 10; *Smith v. City of Napa* (2004) 120 Cal.App.4th 194, 202), the failure to object in the trial court forfeits it in any event (*People v. Riccardi* (2012) 54 Cal.4th 758, 827, fn. 33).

## II. Conceded Errors in Fees and Fines

### A. Government Code Section 70373

In its oral rendition of judgment, the trial court imposed $70 as a "[c]ourt facilities charge." The order granting probation, however, references an undesignated *$80* fee pursuant to "SB1407M/I."

Government Code section 70373, enacted in 2008 as part of Senate Bill No. 1407 (Stats. 2008, ch. 311, § 6.5), authorizes an assessment for funding the court facilities construction fund in the amount of $30 for each conviction of a felony or misdemeanor (Gov. Code, § 70373, subd. (a)(1)). As a result, *both* the oral rendition of judgment and the probation order impose an unauthorized amount for the fee, which allows defendant

6

to raise the issue initially on appeal.  (Cf. *People v. Zito* (1992) 8 Cal.App.4th 736, 740-742.)  We thus accept the People's concession and modify the judgment to reflect a fee of $60 for the construction fund.

### B.  Penal Code Section 1202.4

At the time of defendant's offenses, the minimum restitution fine a trial court could impose pursuant to Penal Code section 1202.4 was $200.  (Former Pen. Code, § 1202.4, subd. (b), as amended by Stats. 2010, ch. 351, § 9.)  Effective 2012, the minimum was $240.  (See Pen. Code, § 1202.4, subd. (b)(1) [also scheduling increases to $280 for 2013, and to $300 for 2014].)

At defendant's 2012 sentencing, the trial court questioned why the probation officer had recommended a $740 restitution fine.  "The restitution fine is not [$]740.  I don't know where you came up with that.  It's [$]240. . . .  [¶] . . .  It can be—I realize it can be higher than that, but I don't know where [the probation officer] was coming up with [$]740."  The trial court then declined to impose a recommended "$500 felony report fee.  I find that [defendant does not] have sufficient funds to do that or the $59 per day confinement [fee]."  Considering these remarks in combination, we discern that the trial court intended to impose the minimum restitution fine as an act of leniency (even though a lack of present assets does not *require* a court to impose a minimum restitution fine (*People v. McGhee* (1988) 197 Cal.App.3d 710, 715)).

Because this statute is considered punishment for purposes of ex post facto analysis (*People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1248 (*Valenzuela*)), the minimum fine in effect at the time of defendant's offenses was controlling (see *John L. v. Superior Court* (2004) 33 Cal.4th 158, 182, citing *Lindsey v. Washington* (1937) 301 U.S. 397, 400 [81 L.Ed. 1182] (*Lindsey*) [cannot increase minimum punishment after commission of offense]).

7

Again, defense counsel failed to raise this issue at the time of sentencing. However, this was also an unauthorized sentence, i.e., one that "could not lawfully be imposed under any circumstance in the particular case." (*People v. Scott* (1994) 9 Cal.4th 331, 354.) Although the $240 restitution fine *is* within the lawful discretionary statutory range of the present statute, the trial court announced an intention to impose the *minimum* fine, and the only lawful maximum "minimum" fine that could be imposed under any circumstances was the $200 amount in effect at the time of defendant's offenses. (*Lindsey*, *supra*, 301 U.S. at pp. 400-401 [81 L.Ed. at pp. 1185-1186] [cannot impose new minimum of 15 years under statute as amended after commission of offense, even if sentence was within range authorized under former statute]; cf. *Valenzuela*, *supra*, 172 Cal.App.4th at p. 1248 [even though sex offender fine was amount presently authorized under statute, it was in excess of amount in effect at time of offense and thus unauthorized for purposes of ex post facto principles; issue therefore could be raised initially on appeal].) As a result, the $240 fine was *constitutionally* unauthorized under any circumstances, and defendant did not forfeit the issue.

Moreover, where a trial court has indicated its intent to impose a minimum restitution fine, we cannot discern any reasonable tactical basis for a failure to make sure that a defendant gets the full benefit of this announced leniency. We would thus need to grant defendant relief in any event on the basis of trial counsel's ineffective assistance, it being reasonably probable that the trial court would have reduced the fine further if the proper minimum had been called to its attention.

We therefore accept the People's concession. We will modify the probation order to reduce the restitution fine to $200 (along with the tandem probation revocation fine).

### C. Additional Restitution Fine

The preprinted lines on the probation order include "Restitution per [Penal Code sections] 1202.4[, subdivision] (f) [and] 1202.45," which is where the clerk filled in the

amount of the $240 restitution fine that the trial court had specified in its oral rendition. (This description is something of a non sequitur, because the first referenced statute involves *restitution* to a victim, and the second involves the tandem *parole* revocation fine imposed in connection with restitution fines.)  Immediately below is a line designated "Restitution Fine" (without any further identification of the statutory authorization), in which the clerk filled out an amount of $100 that was not included at any point in the court's oral rendition of judgment (or in the probation officer's recommendations).  A second restitution fine is an unauthorized sentence, so a failure to object in the trial court does not forfeit the issue on appeal.  (*People v. Chambers* (1998) 65 Cal.App.4th 819, 823.)

The clerk's orders and minutes must conform to the oral rendition of judgment. We may correct any deviations on appeal.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Zackery* (2007) 147 Cal.App.4th 380, 387-388.)  We therefore accept the People's concession and strike the $100 "Restitution Fine" from the probation order.

### D.  Penal Code Section 1463.07

Where a person, such as defendant, is released on his own recognizance pending trial, Penal Code section 1463.07 authorizes the imposition of a $25 "administrative screening fee."  In its oral rendition of judgment, the court imposed a "court processing fee of [$]30," which the clerk entered on the probation order as being pursuant to this statute.  Again, this was an unauthorized amount, so forfeiture does not apply.  We accept the People's concession that we must modify the probation order to reduce the fee to the authorized $25.

### DISPOSITION

The order granting probation is modified to reduce the court facilities fee to $60, to reduce the restitution and probation revocation fines to $200, to strike the unspecified

9

$100 "Restitution Fine," and to reduce the administrative screening fee to $25.[1]  As so modified, the order is affirmed.  The trial court is directed to prepare and file an amended probation order in accordance with these modifications.


                                                       BUTZ            , J.


We concur:


        ROBIE           , Acting P. J.


        HOCH           , J.

---

[1]  We also note the probation order failed to include defendant's middle name, Howell, which should be added to the corrected order (in conformity with the complaint, the probation report, and other relevant documents).