Filed 6/12/26  Safariland, LLC v. Cal. Dept. of General Services CA2/5
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SAFARILAND, LLC,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>CALIFORNIA DEPARTMENT OF GENERAL SERVICES,<br><br>     Defendant and Respondent. | B340028<br><br>(Los Angeles County Super. Ct.<br>Nos. 23STCP03199) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge.  Affirmed.
        Lindborg & Mazor, Irina J. Mazor and Peter F. Lindborg for Plaintiff and Appellant.
        Rob Bonta, Attorney General, Tamar Pachter, Assistant Attorney General, Michael D. Gowe and Darren Shaffer, Deputy Attorneys General, for Defendant and Respondent.

————————————

Plaintiff and appellant Safariland, LLC appeals a judgment in favor of defendant and respondent California Department of General Services (DGS), after the trial court denied Safariland's petition for writ of mandate under Code of Civil Procedure section 1085. Safariland contends DGS lacked authority to reject Safariland's bid protest, and that its petition for writ of mandate should have been granted. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### A.   *Introduction and Overview*

Shortly after DGS posted a notice of intent to award a public contract to a different company, Safariland notified DGS of its intent to protest the award. DGS sent Safariland detailed instructions on the protest process. Safariland followed those instructions with one key deviation. Rather than sending the required check or money order to the DGS address provided in the instructions, Safariland sent the check to the Office of Administrative Hearings (OAH) at a different address. DGS notified Safariland that by failing to submit a complete protest by the submission deadline, Safariland had waived its right to protest. Safariland filed a petition for writ of mandate seeking to compel DGS to accept its protest, the trial court denied Safariland's petition, and Safariland appealed.

**B.      *Safariland's Bid and Attempted Protest***

In February 2023, Safariland submitted a proposal in response to a request for proposals for a contract to supply the state of California and participating local government agencies with body armor for purchase for a five-year period.  After DGS posted a notice of intent to award the contract to a different company, Safariland filed a written notice of intent to protest on July 14, 2023.  On July 17, 2023, DGS sent Safariland a letter with instructions for filing the protest, stating in relevant part:

> "The Safariland Group is required to file with the Procurement Division's Alternative Protest Coordinator **before 5:00 p.m. (PDT/PST) on Tuesday, July 25, 2023,** a complete protest filing in accordance with 2CCR, Section 1408.[1]  The protest filing is comprised of the following:  (1) a $50.00 filing fee; (2) a Detailed Written Statement of [P]rotest and any exhibits, pursuant to 2 CCR Section 1412; and (3) either a $7,000.00 deposit for estimated arbitration costs or, if you are a California certified small business, a copy of your current small business certification.  The fee and deposit must be in the form of a check or money order made payable to the Office of Administrative Hearings and remit to the following address:

---

[1] We understand the references to 2 CCR, sections 1408 and 1412 in the text of the DGS letter to be referring to the applicable DGS regulations, which appear in Title 1 of the California Code of Regulations, not in Title 2.  The regulations are discussed later in our opinion.

*Department of General Services*
*Procurement Division/Alternative Protest Coordinator*
*707 3rd Street, 2nd Floor*
*West Sacramento, CA 95605*

"[¶] . . . [¶]

"If the Detailed Written Statement of [P]rotest and exhibits are sent to the Coordinator by facsimile, the Protestant must: verify that the pages sent were all received by the Coordinator; and remit the required deposit and filing fee to the Coordinator by any reasonable means. Your complete protest filing must be received by the Coordinator by the above stated deadline. ***You are advised that failure to comply with any* of *the above requirements waives your right to protest.***"

The letter was sent by Cheryl Angeles, a DGS employee in the Procurement Division since 2000, whose signature block identified her as the section manager for the Purchasing Authority Management Section. According to a declaration later prepared by Angeles, her duties included "oversight of the Alternative Protest Pilot Project (APPP) under Public Contract Code section 12125 et al., and oversight of the person(s) acting as an APPP Coordinator." At the time of the bid solicitation and when she signed the letter, Angeles "was acting as the APPP Coordinator," whose "duties are normally performed by an Information Technology Supervisor II in my section. As Section Manager, I oversee this position and fulfill its duties when the position is vacant."

4

On July 25, 2023, Safariland sent its protest statement to the West Sacramento address provided in the July 17, 2023 DGS letter. On the second page of the protest statement, Safariland advised that "The OAH filing fee of $50 and the arbitration deposit of $7,000 were sent overnight on Friday July 21st via Fed Ex" and provided a tracking number. The protest statement did not specify the address to which the filing fee and arbitration deposit were sent. In fact, the payments were not sent to the same West Sacramento address as the protest statement, but to a different address where OAH was located on Gateway Oaks Drive in Sacramento.

On July 28, 2023, DGS sent an email to Safariland, requesting documentation showing delivery of the filing fee and arbitration deposit to the DGS Procurement Division in West Sacramento, explaining that they were unable to confirm that the protest package had been received. Safariland sent a proof of delivery, and DGS pointed out that the delivery address was in Sacramento, not the West Sacramento address identified in the DGS July 17, 2023 letter. On Monday, July 31, Safariland acknowledged that the checks had been sent to a different address, due to an error by Safariland's accounts payable department. The email from Safariland to DGS continued, "I hope that this does not affect our attempted protest. As mentioned, a good faith effort was made to make payment and all applicable documents were submitted as per the required process."

On July 31, 2023, Cheryl Angeles sent a letter to Safariland, advising that under California Code of Regulations, Title 1, section 1408, a complete protest needed to be filed by July 25, 2023, and that "Failure to submit a complete protest, by

5

that date, waives the right to protest. [¶] To date, we have not received a complete protest filing. Consequently, this protest will be closed, and no further action will be taken."

## C.    *Trial Court Proceedings*

On September 1, 2023, Safariland filed a petition seeking a writ of mandate directing DGS to permit the protest to proceed on the grounds that Safariland had substantially complied with the requirements to lodge a protest. DGS filed its response, and after both parties submitted declarations and briefing, the court denied Safariland's petition. The court entered judgment against Safariland, and Safariland appealed.

## DISCUSSION

## A.    *Standard of Review[2]*

"In reviewing the trial court's denial of a writ of mandate pursuant to Code of Civil Procedure section 1085, '[w]here the facts are undisputed and the issue is one of statutory interpretation, we review the trial court's ruling de novo.' [Citations.]" (*California Manufacturers & Technology Assn. v. Office of Environmental Health Hazard Assessment* (2023) 89 Cal.App.5th 756, 769.)

---

[2] The parties do not specify whether Safariland sought relief as administrative or regular mandamus. (See *Beach & Bluff Conservancy v. City of Solana Beach* (2018) 28 Cal.App.5th 244, 258–259 [discussing the difference between administrative and regular mandamus].)

6

**B.** *Applicable Law*

The bid protest process followed by DGS in this case is authorized in the Public Contract Code, sections 12125 through 12129.[3]  Both DGS and the California Department and Technology are authorized to administer the protest process (§ 12125), and at the direction of the California Legislature, DGS has developed and adopted regulations governing the protest process (§ 12126, subd. (a) [DGS shall "develop procedures and guidelines for the implementation of" the protest process]; Cal. Code Regs., tit. 1 (1 CCR) §§ 1400−1440.)

The regulations detail the requirements for filing a protest, and define the "Coordinator" of the protest process as "the person designated as the Alternative Protest Pilot Project Coordinator by the Department of General Services, Procurement Division, to coordinate all aspects of the Solicitation under the Alternative Protest Pilot Project (Public Contract Code sections 12125−12130)."  (1 CCR § 1402, subd. (e).).  The protesting party must submit (1) "the Detailed Written Statement of Protest and any exhibits specified in section 1412"; (2) "a check or money order made payable to the Office of Administrative Hearings for

---

[3] All further statutory references are to the Public Contract Code unless otherwise stated.  In this opinion, we will refer to the bid protest process authorized by this section as the protest process, but we acknowledge that the statutory name has at various points in time been either the Alternative Protest Process or the Alternative Protest Pilot Project.  (Compare current and former Pub. Cont. Code, § 12125; see Rizzo, *California Procurement Handbook*, § 9:8.)

the OAH filing fee of $50"; and (3) the arbitration deposit.[4] (1 CCR § 1408, subd. (a))  Each of these items must be submitted to the Coordinator by 5 p.m. of the statutory deadline,[5] and if the written protest statement is submitted by facsimile, the protesting party must "[v]erify that the pages sent were all received by the Coordinator;" and "[r]emit the required deposit and filing fee to the Coordinator by any reasonable means.  If sending via carrier, the postmark date or equivalent shall be used to determine timeliness."  (1 CCR § 1408, subd. (b).)  If a protesting party is not a certified small business, it must make a deposit of estimated arbitration costs, "by check or money order made payable to the Office of Administrative Hearings" and "[f]ailure to remit a timely required deposit waives the right of protest."  (1 CCR § 1408, subd. (c)(5).)

## C.    *Analysis*

Safariland raises four contentions on appeal:  (1) that the only published case analyzing application of the protest process requirements – *Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581 (*Imagistics*) – is

---

[4] The regulation outlines the arbitration deposit amount, and establishes a different process if the protesting party is a certified small business.  (1 CCR § 1408, subd. (c) & (d).)

[5] The statutory deadline is "the Close of Business on the 7th working day after the time specified in the Solicitation for written Notice of Intent to Protest under section 1406 (1 CCR § 1408, subd. (a)), and close of business is defined as 5 p.m.  (1 CCR § 1402, subd. (c).)

either distinguishable or incorrect; (2) DGS abused its discretion when it rejected Safariland's protest because the check was not delivered to the Coordinator (1 CCR § 1408); (3) deference should not be given to DGS's interpretation of the regulation; and (4) the Coordinator position was vacant. None of these arguments persuades us that a writ of mandate should issue.

1. *The Imagistics Case*

Safariland argues that *Imagistics* is either inapplicable or incorrectly decided. We disagree on both counts.

Similar to the procedural background here, the plaintiff and appellant in *Imagistics* unsuccessfully sought to protest the award of a public contract to another company, and the trial court denied the plaintiff's petition for writ of mandate. (*Imagistics, supra*, 150 Cal.App.4th at pp. 585–588.) In *Imagistics*, the statement of protest was due by the close of business on July 5th. Plaintiff timely delivered the protest and the exhibits, but the check was not delivered until just after close of business, and a DGS staff member who was still at the office refused to accept the check. (*Id*. at pp. 585–586.) Around 6:30 p.m., DGS sent a fax notifying plaintiff that its protest was terminated, as it was incomplete for want of a check for the fee and deposit. The next day, DGS received a letter and a check in an envelope postmarked July 5. DGS returned the check, stating that the late submission of payment did not meet filing requirements. DGS awarded the contract to a different party on July 7th. (*Id*. at p. 586.)

Plaintiff filed a petition for writ of mandate, which the trial court denied, rejecting plaintiff's argument that by aggregating

9

the company's compliance with subdivisions (a) and (b) of 1 CCR section 1408, the court could find that plaintiff had fully complied with the regulation's requirements. (*Imagistics, supra*, 150 Cal.App.4th at pp. 586–587.) "Applying the principle of strict compliance, [the trial court] ruled that plaintiff could not appear in person with the [statement of protest] and exhibits but without a check (as required under [1 CCR § 1408, subd. (a)]), or fax the [statement of protest] and mail a check postmarked on the deadline but fail to fax the exhibits (as required under [1 CCR § 1408, subd. (b)])." (*Id*. at p. 587.) The reviewing court's opinion rejected plaintiff's argument that it had substantially complied with a reasonable reading of the regulations, explaining that "the regulation does not grant the protest Coordinator any discretion to accept a late filing; rather, it specifically calls for forfeiture of a protest for noncompliance. Under these circumstances, the doctrine of substantial compliance is inapplicable, as a court does not have the power to issue a writ of mandate to accept a late filing." (*Imagistics, supra*, 150 Cal.App.4th at p. 588.)

We first reject Safariland's attempt to distinguish *Imagistics* from the case before us. Safariland argues that because *Imagistics* concerned the *timeliness* of the plaintiff's submission, its reasoning does not apply because Safariland timely submitted both the statement of protest and its fee payment. The reasoning and holding of *Imagistics* is not so narrow, as it concerns not just timeliness, but the extent to which either the court or the coordinator has discretion to excuse noncompliance or partial compliance with the regulation's requirements. The reviewing court held that the coordinator did not possess any such discretion, because the regulation

10

"specifically calls for forfeiture of a protest for noncompliance."
(*Imagistics, supra*, 150 Cal.App.4th at p. 588.)

We also reject Safariland's argument that *Imagistics* was wrongly decided because its application of the principle of strict compliance was unwarranted in the absence of a legislative mandate for the particular regulatory requirement. Safariland argues that unlike the election cases upon which the *Imagistics* court relied (see *Imagistics, supra*, 150 Cal.App.4th at pp. 588–589, citing *Barnes v. Wong* (1995) 33 Cal.App.4th 390 and *Sonoma County Nuclear Free Zone '86 v. Superior Court* (1987) 189 Cal.App.3d 167), the question of correctly tendering the filing fee and arbitration deposit is more like payment of a filing fee, which is not a prerequisite for a timely filing, as set forth in the rules of court and affirmed in *Rapp v. Golden Eagle Ins. Co.* (1994) 24 Cal.App.4th 1167, 1172–1173. As explained in more detail in the next section, we are not convinced by Safariland's criticism of *Imagistics* in this regard. The Legislature has given DGS express authority to "develop procedures and guidelines for the implementation" of the protest process (Pub. Cont. Code, § 12126, subd. (a)), and has expressly provided that "[a]ny protests filed in relation to the proposed contract award shall be conducted under the procedures set forth by" DGS (*id.*, subd. (b)). The same statute also imposes on DGS a seven-day time limit to review the protest to determine whether it is frivolous. (*Id.*, subd. (c)(2).) We see no issue with applying strict compliance principles in this context, particularly absent any statutory or regulatory language giving DGS authority to accept a protest without payment, as is the case in the rules of court governing filing a notice of appeal. (Cf., Cal. Rules of Ct., Rule 8.100 (b)(3), (c) & (d).)

Safariland also argues that 1 CCR section 1408's penalty for noncompliance is invalid because it is unwarranted in the absence of any statute or case holding that the *place* of the fee payment, rather than its *timing*, has jurisdictional implications. Anticipating the counterargument that permitting a protesting party to deliver checks directly to OAH rather than DGS places an unnecessary burden on DGS to confirm receipt of the checks, Safariland cites to *Renken v. Compton City School Dist.* (1962) 207 Cal.App.2d 106 (*Renken*). *Renken*, however, discussed the question of additional burden on a school district only after finding that the school district had unreasonably and arbitrarily imposed a requirement that permitted it to withhold dues in favor of one organization, but refuse to do the same for a similar type of organization. (*Renken*, *supra*, 207 Cal.App.2d at p. 114.) Only as an additional basis for its decision did the *Renken* court point out that its conclusion was not weakened by the trial court's finding that refusing to permit such discrimination would " 'increase[] without foreseeable limitation' " the already great burden on the school district's accounting and clerical staff of administering wage and salary deductions, because a greater number of employees would seek such deductions. (*Id*. at p. 115.)

We find the holding and reasoning of *Imagistics* to be valid, persuasive, and applicable to the facts of the case before us.

2. *Validity of the DGS Regulations*

Safariland argues that because the enabling statutes under which 1 CCR section 1408 was adopted do not address fee payment, DGS abused its discretion when it determined that

failure to remit the fees to the correct address constituted a waiver of the right to protest. We are unpersuaded.

As discussed already, the Legislature has directed DGS to "develop procedures and guidelines for the implementation" of the protest process. (§ 12126, subd. (a).) Safariland does not argue that DGS lacks authority to set filing fees or require an arbitration deposit as part of the protest process, or to require payment of those amounts. Instead, the thrust of Safariland's argument seems to be that the regulation requiring those payments to be delivered to the protest coordinator is invalid because it is not reasonably necessary to effectuate the purpose of the statute. (Gov. Code, § 11342.2; *In re Mohammad* (2022) 12 Cal.5th 518, 529 [valid regulation must be consistent with and "reasonably necessary to effectuate the purpose of the authorizing law"], citing *Morris v. Williams* (1967) 67 Cal.2d 733, 749.) Although Safariland does not phrase its argument this way, it is implicitly arguing that DGS abused its discretion when it, without statutory or valid regulatory authority, rejected Safariland's protest solely on the ground that the required fees were not timely delivered to the address specified by DGS.

Just as the reviewing court in *Imagistics* rejected the argument that DGS was not prejudiced by a brief delay in the arrival of the check (*Imagistics, supra*, 150 Cal.App.4th at p. 590), we reject Safariland's argument that because it had informed the protest coordinator and the checks were ultimately destined for OAH, DGS was precluded from rejecting the protest solely on the grounds that the check had not been sent to the correct location. Similar to the plaintiff's argument in *Imagistics*, Safariland's argument "disregards the massive number of contracts and proposals that defendant DGS administers, and

13

apparently is premised on the belief that it would be a simple matter" to correlate the payment with the protest. (*Ibid*., fn. omitted.) Safariland's reliance on *Renken* to argue that DGS somehow exceeded its rulemaking authority by imposing a requirement that was not reasonably necessary is also not well taken, for the same reasons discussed in the previous section. (See *Renken*, *supra*, 207 Cal.App.2d at p. 114.)

In an earlier section of its brief, Safariland argues that the right to protest a bid is analogous to the right to appeal, citing to *Rapp v. Golden Eagle Ins. Co., supra*, 24 Cal.App.4th at pp. 1172–1173. *Rapp* held that the right to appeal a court decision cannot be denied for failure to timely pay a filing fee. The attempted analogy fails because the rules of court under review in *Rapp* expressly provided a mechanism to address late payment of fees (*id*. at pp. 1169−1170), while the DGS regulations here expressly provide that the filing fee and arbitration deposit must be delivered "to the Coordinator by the Close of Business" (§ 1408, subd. (a), and that "[f]ailure to remit a timely required deposit waives the right of protest" (*id*., subd. (c)(5)). The court in *Imagistics* noted the same absence of discretion in the regulatory language: "the regulation does not grant the protest Coordinator any discretion to accept a late filing; rather, it specifically calls for forfeiture of a protest for noncompliance. Under these circumstances, the doctrine of substantial compliance is inapplicable, as a court does not have the power to issue a writ of mandate to accept a late filing." (*Imagistics, supra*, 150 Cal.App.4th at p. 588.)

14

### 3. *Deference to Agency Interpretation*

Safariland asks this court to refrain from giving deference to DGS's interpretation of 1 CCR section 1408 because the location where a fee payment is remitted does not require subject matter expertise. Because the regulatory language is clear, there is no need to give deference to DGS's application of the regulation's requirements.

### 4. *The Role of Coordinator*

Finally, Safariland argues that it was impossible for it (or any other protesting party) to comply with the requirements of 1 CCR 1408 because the coordinator position was vacant during the relevant time period. We reject this argument.

The identity of the protest coordinator is defined in 1 CCR section 1402, subdivision (e), as "the person designated as the Alternative Protest Pilot Project Coordinator by the Department of General Services, Procurement Division, to coordinate all aspects of the Solicitation under the Alternative Protest Pilot Project (Public Contract Code sections 12125–12130)." Nothing in 1 CCR section 1402 requires a specific action by DGS to "designate" a particular person to act as the coordinator for the protest process. While Safariland argues that the coordinator must be a "specific human being,", a more reasonable reading of the regulations is that while DGS may have an internally designated coordinator, externally all protesting parties need only address their submissions to the coordinator. Consistent with this reading of the regulations,

15

Angeles's July 17, 2023 letter giving instructions on how to file a protest advises Safariland that the filing fee and the arbitration deposit "must be in the form of a check or money order made payable to the Office of Administrative Hearings and remit to the following address." The address given (for DGS offices in West Sacramento) identifies the Procurement Division and the Alternative Protest Coordinator as the recipients, but does not name a specific human being. Angeles's declaration establishes that although the coordinator duties are usually carried out by one of her subordinates, she oversees the position and fulfills the coordinator duties when the position is vacant. As such, she was the coordinator designated by DGS.

## DISPOSITION

The judgment is affirmed. Respondent California Department of General Services is awarded its costs on appeal.
NOT TO BE PUBLISHED.


MOOR, J.

WE CONCUR:


HOFFSTADT, P. J.


KIM (D.), J.

16